James Russell WEDDELL, Appellant,

v.

Mark MEIERHENRY, Attorney General
of the State of South
Dakota, Appellee.

No. 80–1480.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1980.

Decided Dec. 11, 1980.

Timothy J. McGreevy, Dana, Golden, Moore & Rasmussen, Sioux Falls, S.D., for appellant.

LeAnn Larson Finke, Asst. Atty. Gen., Pierre, S.D., for appellee.

Before ROSS and HENLEY, Circuit Judges, and RENNER, District Judge.*

ROSS, Circuit Judge.

James Russell Weddell appeals the district court's[1] denial of his application pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. We affirm.

Weddell was convicted of grand larceny and burglary of a Coast–to–Coast store in Wagner, South Dakota, in violation of S.D. C.L. §§ 22–37–1 and 22–32–9. Weddell, along with six codefendants, was arrested inside the Yankton Sioux Tribe Pork Plant following a takeover by the defendants of that plant. The weapons and ammunition allegedly stolen from the Coast–to–Coast store in Wagner were found on the premises of the plant.

The Supreme Court of South Dakota affirmed Weddell's conviction on November 17, 1977, and denied a rehearing in the matter on December 16, 1977. *State v. Winckler*, 260 N.W.2d 356 (S.D.1977). Weddell thereafter filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied Weddell's application and he now appeals, contending (1) that the crimes charged were committed in "Indian Country" within the meaning of 18 U.S.C. § 1151 so as to preclude state jurisdiction over the defendants; (2) that he was denied a fair trial as a result of remarks made by the prosecution in its closing argument to the jury in the state criminal proceedings; and (3) that his allegedly illegal arrest deprived the South Dakota state court of jurisdiction.

## I. Federal Jurisdiction Over Situs of the Crime

Weddell contends that the crimes charged were committed within "Indian Country" within the meaning of 18 U.S.C. § 1151 so as to preclude state jurisdiction over the defendant. Under 18 U.S.C. § 1151, the federal government has jurisdiction over crimes committed by an Indian within "Indian Country," defined broadly to include dependent Indian communities.

The early case of *United States v. McGowan*, 302 U.S. 535, 539, 58 S.Ct. 286, 288, 82 L.Ed. 410 (1938), defined a dependent Indian community as one in which the United States retained "title to the lands which it permits the Indians to occupy" and "authority to enact regulations and protective laws respecting this territory." Other courts have expanded this concept, considering "the nature of the area in question, the relationship of the inhabitants of the area to Indian tribes and to the federal government, and the established practice of government agencies toward the area." *United States v. Martine*, 442 F.2d 1022, 1023 (10th Cir. 1971).

In *United States v. Morgan*, 614 F.2d 166, 170 (8th Cir. 1980), this court was asked to determine whether bar premises within the exterior boundaries of an Indian reservation were within the non–Indian community so as to be exempt from a statute requiring both state and tribal liquor licenses under 18 U.S.C. §§ 1154(c) and 1156, which prohibit the sale of alcoholic beverages in "Indian Country," exclusive of "fee–patented lands in non–Indian communities." This court defined "community" to require "an element of cohesiveness * * * manifested

---

* The Honorable ROBERT G. RENNER, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable FRED J. NICHOL, Chief Judge of the United States District Court for the District of South Dakota.

either by economic pursuits in the area, common interests, or needs of the inhabitants as supplied by that locality * * * [more than] mere density of population * * percentage of such inhabitants * * * and the history and background of the area." *Id.* at 170.

Finally, in *United States v. Mound*, 477 F.Supp. 156, 158, 160 (D.S.D.1979), the court found that a federally financed housing project was a dependent Indian community within the meaning of section 1151(b), the "crucial consideration" being "whether such lands have been set apart for the use, occupancy and protection of dependent Indian peoples." *Id.* at 158 *quoting Youngbear v. Brewer*, 415 F.Supp. 807, 809 (N.D.Iowa 1976), *aff'd*, 549 F.2d 74 (8th Cir. 1977).

■ In our opinion, the district court correctly determined that the crimes of grand larceny and burglary did not occur in "Indian Country" as defined in 18 U.S.C. § 1151(b), so as to preclude state court jurisdiction.[2] A review of the Stipulation of Facts entered into by the parties convinces us that Wagner is not a dependent Indian community. Wagner, South Dakota, is located within the exterior boundaries of the original Yankton Sioux Indian Reservation. However, as a municipal corporation, Wagner is independent from the Yankton Sioux Tribe. Approximately 95 percent of all property within the town limits, including the lot on which the Coast–to–Coast store is located, is deeded. Only 16.3 percent of the population of Wagner is Indian. And although federal funds comprise 25 percent of the Wagner School District budget, the district court found that funding to be proportionate to the Indian student enrollment. As the petitioner points out, the Bureau of Indian Affairs office and a Public Health Service hospital located in Wagner administer various federal programs for members of the reservation.

■ We agree with the district court that it would be unwise to expand the definition of a dependent Indian community under section 1151 to include a locale merely because a small segment of the population consists of Indians receiving various forms of federal assistance. Although the community of Wagner is biracial in its composition and social structure, it is clearly not a dependent Indian community under any of the definitions set forth in the cases discussed above.

## II. *Prosecutorial Misconduct*

■ Petitioner next claims that the prosecutor, in his closing argument, improperly directed the jury's attention to the defendant's failure to testify.[3] Our review of the record convinces us that while some of these remarks were objectionable the district court correctly determined that the

---

**2.** The Supreme Court of South Dakota has twice determined that the original Yankton Indian Reservation had been diminished by an Act of Congress. *Wood v. Jameson*, 81 S.D. 12, 130 N.W.2d 95, 99 (1964); *State v. Williamson*, 211 N.W.2d 182, 184 (S.D.1973). Appellant does not challenge these holdings in this appeal.

**3.** The petitioner objects to these comments by the prosecution:

Now, I am sure it is going to be suggested, there is going to be an implication there was somebody else, but I submit to you there is not one iota, not one drop of evidence in this record, to indicate it was anybody else other than these people that were involved.

\* \* \* \* \* \*

Finally, I expect the defense in their argument to raise a question and say "Why didn't the State call other witnesses, there has been other names brought out during the course of this trial." I am going to–if this is said, certainly there will be more comment about

that in final argument. But I want to tell you something, an attorney, a member and officer of the Court, and a representative of the State of South Dakota, I think I have an obligation, the evidence I present, and when I put a witness on the stand, I vouch for his truthfulness.

\* \* \* \* \* \*

But now, there is one thing that is missing from this whole thing I think that everybody seems to be overlooking; these people seem to indicate to you there has got to be some other independent witnesses that are responsible for this. They have the right to call them.

\* \* \* \* \* \*

I am telling the jury that it is the law, that these people had the right to call these people as witnesses. Now, they are complaining about their absence, I think some special mentioning probably is due with reference to Mr. Dusenberry and Hare.

\* \* \* \* \* \*

statements, which primarily emphasize the defendant's failure to call third party witnesses, were not grounds for post conviction relief.

■ It is well established that a prosecutor may not call the jury's attention to the defendant's failure to testify on his own behalf. *Griffin v. California*, 380 U.S. 609, 613, 615, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106 (1965). However, reversal is not required where the prosecutor remarks on the defendant's failure to call witnesses or to produce evidence to either establish his defense or to refute the state's evidence, except where the defendant alone has the information to do so. *See, e. g., Lockett v. Ohio*, 438 U.S. 586, 594–95, 98 S.Ct. 2954, 2959, 57 L.Ed.2d 973 (1978); *United States v. Johnson*, 563 F.2d 936, 942 (8th Cir. 1977), *cert. denied*, 434 U.S. 1021, 98 S.Ct. 746, 54 L.Ed.2d 768 (1978); *United States v. Thurmond*, 541 F.2d 774, 776 (8th Cir. 1976), *cert. denied*, 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977); *United States v. Thompson*, 490 F.2d 1218, 1221 (8th Cir. 1974).

■ Prosecutorial comment concerning the defendant's failure to refute the government's case is at most harmless error beyond a reasonable doubt in a case such as this where the jury would not "naturally and necessarily" view the prosecutor's comments as a reference to the defendant's failure to testify. *United States v. Sanders*, 547 F.2d 1037, 1042 (8th Cir. 1976), *cert. denied*, 431 U.S. 956, 97 S.Ct. 2679, 53 L.Ed.2d 273 (1977). Moreover, the trial court's cautionary instructions to the jury to disregard the prosecutor's comments arguably relating to the defendant's failure to testify rendered harmless beyond reasonable doubt any error and sufficed to cure whatever prejudice, if any, accrued to the defendant. *United States v. Biondo*, 483 F.2d 635, 645 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974).

■ We have consistently noted that the trial court is vested with broad discretion in the area of closing arguments, *United States v. Young*, 618 F.2d 1281, 1289 (8th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980). Absent a clear abuse of that discretion, the ruling of the trial court may not be disturbed. *United States v. Bohr*, 581 F.2d 1294, 1301 (8th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). In the absence of any showing of prejudicial error, we find no abuse of that discretion in the instant case.

### III. *State Court Jurisdiction*

Finally, petitioner contends that he was illegally arrested within Indian Country because he was not extradited from the jurisdiction of the Yankton Sioux Tribe. Therefore, he claims that his arrest divested the state court of jurisdiction over him and should have precluded his trial by the state.

■ However, even assuming *arguendo* that the arrest was illegal, it is well estab-

---

Basicly, [sic] did anyone give you any facts, was there any facts to justify what they said? The State produced the facts. * * * Again, I would state that these, the defendants, have the power of subpoenaing a witness. If such an explanation is available they have an opportunity to call such independent witness to establish this. * * * And now they are not in a position to complain.

&ast; &ast; &ast; &ast; &ast; &ast;

Well, now the defendants come here and say "No, not so." They just say no, it is not so, that is the only thing they have done. They say it is not so without relying on any evidence of their own.

&ast; &ast; &ast; &ast; &ast; &ast;

I for the life of me cannot remember anybody testifying that this gun belonged to Mr. Costello. Now, Mr. Costello had possession of that gun according to Mr. Huebbling that night, but there is no evidence that this was his gun.

&ast; &ast; &ast; &ast; &ast; &ast;

And the evidence in this case at least–and it is unexplained any other way, is to the effect that these people were together at all times, they came into this plant together, they were together when they left the plant that night, they stayed together all that time. There isn't any inference that there was–there is no evidence or circumstances to indicate anything else.

The trial court sustained objections to some of these comments, and admonished the prosecutor to refrain from making further similar remarks. Moreover, in its instruction number 5 the court informed the jury of the scope of the right against self–incrimination.

lished that an illegal arrest does not void a subsequent conviction. *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975); *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Pruitt v. Hutto*, 542 F.2d 458, 459 (8th Cir. 1976).

Only in *United States v. Toscanino*, 500 F.2d 267, 274–79 (2d Cir. 1974), has a court carved out an exception to the illegal arrest rule. In *Toscanino* the court remanded for an evidentiary hearing concerning the defendant's allegation that he was illegally kidnapped from Uruguay and transported to the United States in a manner which "shocked the conscience" of the court. That exception was expressly limited by the Second Circuit in *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 65 (2d Cir.), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975), to egregious incidents, as in *Toscanino*, which shock the conscience.

The facts of this case simply do not suggest the type of shocking conduct described in *Toscanino, supra*, 500 F.2d at 274–79, that would provide grounds for granting appellant's requested relief.

For the reasons discussed above, the judgment of district court is affirmed.