**UNITED STATES of America, Plaintiff,**

v.

**OCEANSIDE OKLAHOMA, INC., an Oklahoma Corporation, and Larry Shaver, individually and as President of Oceanside Oklahoma, Inc., Defendants.**

**No. CIV–81–877–D.**

United States District Court, W. D. Oklahoma.

July 8, 1981.

David Russell, U. S. Atty. by Kathleen Flanagan, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Lee Cate, Norman, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This action is presently before this Court on stipulated facts to determine whether 18 U.S.C. §§ 1154, 1156, 3113, 3617, 3618 and 3619 apply to a tract of land formerly held in trust by the United States for the use and benefit of Elliott Gallaher and now held in fee patent by Defendant. The land in question was Indian trust land and is located in an area checkerboarded by Indian trust lands and non-Indian lands. Within five miles in all directions of the tract in question, there are 8,388.705 acres of Indian land (out of approximately 50,000 acres) held in trust for the benefit of 1506 Indian owners. Also within the same area are non-Indian lands of considerable acreage and upon at least two non-Indian properties beer is sold.

The question before the Court is as follows: Is the tract of land in question "Indian country" within the meaning of 18 U.S.C. § 1154 so that the prohibition against introducing intoxicating liquor on Indian land is applicable to said tract under *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). It has been agreed by the parties that the tract in question is not a reservation nor is it now allotted land. Therefore, if the statutes set out above are to apply to the tract in question the tract must be found to be a part of an Indian community. *See United States v. Mazurie, supra.*

In order to determine whether a tract of land is an Indian community, the Court will consider several factors which include:

1. Title to the land.
2. Purpose of the community.
3. Relationship of the community to a tribe.
4. Relationship of the community to the federal government.
5. Composition of the community.
6. Practice of state government agencies toward the community.

*See United States v. Mound,* 477 F.Supp. 156 (D.S.D.1979) (construing the term "dependent Indian community" as used in 18 U.S.C. § 1151(b)); *see also Weddell v. Meierhenry,* 636 F.2d 211 (8th Cir. 1980).[1]

In the instant case the title to the tract in question is now held in fee by non-Indians and the surrounding lands are a checkerboard of land held by Indians and non-Indians. Therefore, the title to lands in the area is quite mixed and in the circumstances as presented to the Court it cannot be determined that this is an Indian community on the basis of land titles.

The purpose of the community is likewise varied. Some of the land is held by Indian families who actually live on that land; some of the land is held for the use and benefit of Indian owners not living on the land; some of the land is held by non-Indians for either commercial or residential pur-

---

1. The Court in the *Weddell* case held that "it would be unwise to expand the definition of a dependent Indian community ... to include a locale merely because a small segment of the population consists of Indians receiving various forms of federal assistance." 636 F.2d at 213.

poses; and some of the land in the area constitutes a state park of the State of Oklahoma. Therefore, the purpose is mixed and varied in this area and cannot be said to present an Indian community.

The relationship of the community to the tribe also appears to weigh against this area being an Indian community as there is no apparent effort by the tribe to exercise jurisdiction or control over the general area.

The relationship of the federal government toward the community is likewise mixed. Some of the land is held in trust for the use and benefit of Indian owners and some of the land is held by non-Indian owners over which the Federal government has no special relationship or control.

The composition of the community is mixed, being made up of Indians and non-Indians as discussed above.

The relationship of the State government and its agencies toward the community is unknown from what has been presented to the Court. Nothing has been presented which would indicate that State law does not apply to the non-Indian lands in the area or that State agencies do not exercise authority over non-Indian lands in the area.

In view of the foregoing the Court finds and concludes that the tract of land in question is not located within an Indian community and as such the statutes cited above would not be applicable to the tract in question. Furthermore, the Court finds that the *Mazurie* case cited above is distinguishable from the instant case in that the *Mazurie* case dealt with a tract of land held by a non-Indian located within the boundaries of an Indian reservation and adjacent to an Indian village. The instant tract of land is not located within an Indian reservation, is not allotted trust land, is not adjacent to an Indian village and is not a part of an Indian community within the meaning of the statutes involved herein. The Plaintiff will prepare an appropriate judgment based on the foregoing.