DANIEL THOMAS PENDLETON, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 16771

March 31, 1987                                                734 P.2d 693

---

*Martin H. Wiener,* Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, Reno; *Robert E. Wieland,* Deputy, Reno; *Timothy G. Randolph,* Deputy, Reno, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from the judgment of conviction of one count of felony driving while under the influence, NRS 484.3795.[1] The appellant was convicted of driving while having a prohibited blood alcohol content and breaching a duty imposed by law, proximately causing substantial bodily harm to one Valerie Osborne. He was sentenced to one year in the Nevada State Prison. This appeal followed.

Pendleton alleges three errors on appeal. Each will be discussed in turn. Because we agree that the facts show sufficient juror misconduct to warrant a new trial, we reverse and remand for a new trial.

Pendleton was driving his employer's somewhat decrepit pickup truck along a dirt road in the hills of Sun Valley, Washoe County. He was in search of a place to dump a load of refuse. He passed a motorcycle and continued to the top of the hill. There he turned and headed back down the hill, driving in the center of the road. As he approached the motorcycle, the truck veered to the left and grazed the motorcyclist. The motorcycle slid along the side of the truck as the truck went up an embankment at the side of the road. The motorcyclist, Valerie Osborne, lost control and

---

[1]NRS 484.3795 provides in pertinent part:

    1. Any person who, while under the influence of intoxicating liquor or with 0.10 percent or more by weight of alcohol in his blood, or while under the influence of a controlled substance, or under the combined influence of intoxicating liquor and a controlled substance, or any person who inhales, ingests, applies or otherwise uses any chemical, poison or organic solvent, or any compound or combination of any of these, to a degree which renders him incapable of safely driving or exercising actual physical control of a vehicle, does any act or neglects any duty imposed by law while driving or in actual physical control of any vehicle on or off the highways of this state, if the act or neglect of duty proximately causes the death of, or substantial bodily harm to, any person other than himself, shall be punished by imprisonment in the state prison for not less than 1 year nor more than 20 years and must be further punished by a fine of not less than $2,000 nor more than $5,000.

slid under the truck. The truck then rolled back down the embankment and over Mrs. Osborne, injuring her severely.

Pendleton stopped and helped Mrs. Osborne into the cab of the truck. As she sat there, her husband, Mike Osborne, arrived with another man. A fight ensued wherein Pendleton was severely beaten by Mr. Osborne. The beating stopped when a passerby fired a shotgun into the air.

Police and ambulance crews arrived near the end of the fight. Pendleton and the Osbornes were transported to a hospital. At the hospital, Pendleton was questioned by officer Straits. After observing signs of intoxication, officer Straits determined to arrest Pendleton but did not act on his decision or inform Pendleton of the decision because he was waiting to see if Mrs. Osborne was sufficiently injured to warrant felony charges.

Officer Blakeslee was dispatched to the hospital to investigate the battery upon Pendleton. Blakeslee asked Pendleton to describe the incident. During the conversation, describing the circumstances leading up to the battery, Pendleton admitted having some alcohol to drink prior to the accident. This statement later became the subject of a suppression motion.

At trial, Pendleton's theory of defense was that it was not his driving behavior that was the cause of the injury to Mrs. Osborne. Instead, according to the defense theory, even had he been driving slower and to the right of the center, the rough road and poor condition of the truck would have resulted in the accident.

During the trial, some seventeen months after the accident, and when the road conditions were different from the conditions of the day of the accident, one of the jurors visited the scene with another person. As a result of her investigation, she determined that Pendleton's theory of causation was unbelievable. She related the results of her investigation to the other jurors.

The parties concede that the incident took place on land owned by the United States Bureau of Land Management. Pendleton argues that the courts of this state have no jurisdiction to try such a case. We disagree. The district court has jurisdiction over crimes committed in the county except for crimes committed where the United States has exclusive jurisdiction. NRS 171.010. We find no evidence in the record to support the conclusion that the United States has exclusive jurisdiction over the land in question.

A review of the Nevada Admission Acts reveals no retention of jurisdiction by the United States over the land in question. Therefore, the only way in which the United States could attain exclusive jurisdiction involves an affirmative cession of jurisdiction by the State of Nevada and an affirmative acceptance of jurisdiction

by the United States. Fort Leavenworth R.R. Co. v. Lowe, 114 U.S. 525 (1885). *See also,* United States v. Cliatta, 580 F.2d 156 (5th Cir. 1978). Furthermore, in Nevada, no cession of jurisdiction is effective until it is recorded in the County Recorder's office. NRS 328.110.

Because there is no evidence that Nevada has ever ceded exclusive jurisdiction over the lands in question to the United States, Pendleton's argument must fail. The defendant has the burden of showing the applicability of negative exceptions in jurisdictional statutes. State v. Buckaroo Jack, 30 Nev. 325 (1908); State v. Mendez, 57 Nev. 192, 209, 61 P.2d 300, 305 (1963). Once the state produces evidence that the crime took place in the county, it is incumbent upon the defendant to prove that the incident took place on lands over which the United States has exclusive jurisdiction. *Id.* There being no such evidence in the record, we conclude that the courts of this state had jurisdiction to try Pendleton.

Pendleton next contends that the district court erred in denying his motion to suppress the statements made to officer Blakeslee. Specifically, he argues that the statements should have been suppressed because they were obtained as a result of custodial interrogation before he was advised of his right to remain silent. *See* Miranda v. Arizona, 384 U.S. 436 (1966).

It is undisputed that Pendleton was not advised of his right to remain silent prior to speaking with Blakeslee. The question we are presented with, then, is whether the statements were the product of custodial interrogation. We agree with the district judge that the statements were not the product of custodial interrogation.

We note first that there is substantial evidence in the record of the hearing on the motion to support the conclusion of the district judge that the questioning did not amount to "interrogation" within the meaning of *Miranda.* "Interrogation" consists of express questioning and other acts designed to elicit incriminating statements. Rhode Island v. Innis, 446 U.S. 291 (1980). Here, Blakeslee testified that his design was to investigate a battery upon the appellant. He was not informed that Pendleton was a DUI suspect. As far as Blakeslee was concerned, at the time of the questioning, he was interviewing a victim, not a suspect. *Cf.* Brewer v. Williams, 430 U.S. 387 (1977) (where the officers making the "christian burial" speech were attempting to elicit admissions). Blakeslee was attempting to determine if *another,* Pendleton's attacker, was guilty of a crime. We think that where there is no intent or design to elicit incriminating

responses, there is no interrogation within the meaning of *Miranda.* As the Supreme Court noted in *Innis,* at 301, fn. 5, incriminating responses are those that the prosecution may wish to use at trial. *A fortiori,* the questions must·be such as are designed to elicit statements to be used against the person being questioned, not someone suspected of battering that person. Since Blakeslee was not aware that Pendleton was a potential defendant, he could not have anticipated using the statements against him. We find no error in admitting the statements.

Pendleton also argues that the district court erred in denying his motion for a new trial. We agree.

The motion was made upon the grounds of alleged juror misconduct. Counsel for the defense submitted his affidavit to the effect that two jurors had told him that another juror had visited the accident scene and rejected Pendleton's causal argument. The juror related her findings to the other jurors and essentially became a witness for the prosecution—a witness who was not subject to cross-examination regarding the weather and road conditions. In Russell v. State, 99 Nev. 265, 661 P.2d 1293 (1983), this court reversed a conviction where a juror investigated the driving time between Reno and Carson City. The facts investigated by the juror were crucial to the defense theory of the case and the juror was not subject to cross-examination about traffic conditions, road conditions, weather and other variables. We find the instant case remarkably similar to *Russell.* There was sufficient misconduct to mandate a new trial. We note that the procedure for alleging juror misconduct usually involves submission of affidavits of jurors, detailing the misconduct of other jurors. Under such circumstances, the district judge then may call a hearing to question the affiant about the matter. DCR 13. In the instant case, however, defense counsel submitted his own affidavit. Questioning of the affiant would not adduce firsthand information that would warrant a new trial. However, under the circumstances of this case we see no infirmity in the procedure employed by defense counsel.

The prosecutor opposed the motion for the new trial and in the opposition related the results of his own investigation. The prosecutor's investigation revealed that juror misconduct was even more egregious than that presented by the defense counsel.

We think that where the prosecutor admits all the pertinent facts, he ought not to be heard to complain that the form of the evidence of misconduct was not reliable. Since all the facts establishing juror misconduct were admitted by the prosecutor, we hold that the district court erred in denying the motion for a new trial. We therefore reverse and remand for a new trial.