**State of Vermont v. Homer St. Francis, Jr.; Homer St. Francis; Ronald St. Francis and Homer St. Francis, Sr.**

[563 A.2d 249]

No. 84-550

Present: **Allen, C.J., Peck, Dooley and Mahady, JJ., and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed April 14, 1989

*Jeffrey L. Amestoy, Attorney General, Elizabeth J. Grant, Assistant Attorney General,* and *Nancy GianLorenzo, Law Clerk (On the Brief)*, Montpelier, for Plaintiff-Appellee.

*David W. Curtis, Defender General,* and *William A. Nelson* and *Henry Hinton, Appellate Defenders*, Montpelier, for Defendants-Appellants.

**Dooley, J.** This is an interlocutory appeal by defendants from a pretrial ruling of the trial court. Defendants had moved to dismiss the various criminal charges filed against them for lack of subject matter jurisdiction in the district court. The trial court ruled that defendants bore the burden of proving that they are Indians and that the alleged offenses occurred in "Indian country," as defined by 18 U.S.C. § 1151 (1982). Defendants appeal from these rulings. We affirm.

Defendants also challenge the refusal of the trial judge to recuse himself by reason of his property ownership within the geographic area which defendants claim to be "Indian country." As to that issue we also affirm.

I.

A.

The alleged offenses filed by the State in these various cases include driving while under the influence of intoxicating beverages, 23 V.S.A. § 1201, driving while defendant's right to operate was under suspension, 23 V.S.A. § 674, simple assault, 13 V.S.A. §

1023, simple assault on a police officer, 13 V.S.A. § 1028, and aggravated assault, 13 V.S.A. § 1024.

If the defendants are Indians and if the alleged offenses occurred, as defendants claim, in "Indian country," as that term is used in 18 U.S.C. § 1151, the courts of this state would not have jurisdiction of the first four offenses set forth above (all misdemeanors) by reason of the exclusive federal jurisdiction over such offenses in "Indian country" established by 18 U.S.C. § 1152 (1982). Nor would the courts of this state have jurisdiction with regard to the felony of aggravated assault by reason of the exclusive federal jurisdiction established in 18 U.S.C. § 1153.

Under the federal statute, "Indian country" is defined to include Indian reservations, 18 U.S.C. § 1151(a), "dependent Indian communities," 18 U.S.C. § 1151(b), and Indian allotments, 18 U.S.C. § 1151(c). Defendants concede that there are no Indian reservations or Indian allotments in Vermont. They assert, however, that the alleged offenses all occurred within a "dependent Indian community."

Section 1151's inclusion of "dependent Indian communities" within the definition of "Indian country" codifies the decision of the United States Supreme Court in *United States* v. *Sandoval,* 231 U.S. 28 (1913). Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze,* 18 Ariz. L. Rev. 503, 508 (1976). The criteria to be used to decide whether an area is a "dependent Indian community" are numerous. *United States* v. *Martine,* 442 F.2d 1022, 1023 (10th Cir. 1971). In this regard, various courts have considered evidence which would tend to prove or disprove the following:

> a) that as a bona fide tribe of Indians, the tribe inhabited the land in question and had Indian title to it "in 1790 when the Indian Trade and Intercourse Act became law" continuously through the date "the instant crime was committed on it." *State* v. *Dana,* 404 A.2d 551, 562 (Me. 1979);

> b) "evidence as to the nature of the area in question, the relationship of the inhabitants of the area to Indians Tribes and to the federal government, and the established practice of government agencies toward the area." *United States* v. *Martine,* 442 F.2d at 1023; see also *United States* v. *Sandoval,* 231 U.S. 28; *United States* v. *Joseph,* 94 U.S. 614 (1876). In this context "[t]he testimony of enforcement of-

ficers and Bureau of Indian Affairs officials" is relevant. *Martine,* 442 F.2d at 1023-24; and

c) that the land in question "was established for the use, occupancy and protection of dependent Indians." *United States* v. *Levesque,* 681 F.2d 75, 77 (1st Cir. 1982). This is a difficult element of the test to prove. In *Weddell* v. *Meierhenry,* 636 F.2d 211, 213 (8th Cir. 1980), the Court of Appeals held that a community in South Dakota was not a dependent Indian community even though within a Sioux Indian Reservation.[1]

Based on this evidence, "under section 1151(b), the existence and dependent nature of the affected Indian community must be established." Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze,* 18 Ariz. L. Rev. at 512. Whether the physical location of the alleged crimes was within "a dependent Indian community" is a question of fact. *Martine,* 442 F.2d at 1024. The principal issue presented by this appeal is who bears the burden of proof as to the establishment of that fact.

## B.

■ The principal issue we decide is who bears the burden of proving whether the alleged crimes were committed by an "Indian" and within "Indian country," as defined by federal statute.

---

[1] The *Weddell* court stated that:

> Wagner, South Dakota, is located within the exterior boundaries of the original Yankton Sioux Indian Reservation. However, as a municipal corporation, Wagner is independent from the Yankton Sioux tribe. . . . Only 16.3 percent of the population of Wagner is Indian. And although federal funds comprise 25 percent of the Wagner School District budget, the district court found that funding to be proportionate to the Indian student enrollment. As the petitioner points out, the Bureau of Indian Affairs office and a Public Health Service hospital located in Wagner administer various federal programs for members of the reservation.
>
> We agree with the district court that it would be unwise to expand the definition of a dependent Indian community under section 1151 to include a locale merely because a small segment of the population consists of Indians receiving various forms of federal assistance. Although the community of Wagner is biracial in its composition and social structure, it is clearly not a dependent Indian community under any of the definitions set forth in the cases discussed above.

636 F.2d at 213; see also *Martine,* 442 F.2d at 1023-24.

If defendants are "Indians" and the crimes were committed within "Indian country," then Vermont has no jurisdiction over defendants. 18 U.S.C. §§ 1151, 1152, 1153, 1162. For analytical purposes the questions are essentially the same. We analyze in detail the burden of proof on the issue of "Indian country" and find that defendants have the burden of proof on this issue. We also find they have the burden of proving they are Indians. Defendants must meet these burdens by a preponderance of the evidence.

Our analysis must start with the general rules guiding the allocation of the burden of proof. "There are no hard-and-fast standards governing the allocation of the burden of proof in every situation." *Keyes* v. *School District No. 1, Denver, Colorado,* 413 U.S. 189, 209 (1973). This proposition is based in part on Professor Wigmore's conclusion that "there is not and cannot be any one general solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations." 9 J. Wigmore, Evidence in Trials at Common Law § 2486 (1981). Professor Wigmore states various considerations for allocating the burden of proof. The first is to place the burden on the "party having in form the affirmative allegation." *Id.* (emphasis removed). This is an application of the obvious principle that it is easier to prove the existence of a fact than the nonexistence of a fact. A second test is to determine "to whose case the fact is essential." *Id.* (emphasis removed). And finally, "[s]till another consideration has often been advanced as a special test for solving a limited class of cases, i.e., the burden of proving a fact is said to be put on the *party who presumably has peculiar means of knowledge* . . . ." *Id.* (emphasis in original).

Our limited precedents are consistent with these general principles. In *State* v. *McCaffrey,* 69 Vt. 85, 37 A. 234 (1896), the defendant in a truancy prosecution argued that the State had failed to prove that his child had not received an equivaent education elsewhere, which under the statute removed defendant's obligation to send the child to a local public school. The Court held the burden of proof on the issue of alternative education was on the defendant:

> The respondent contends that to establish the offense it was incumbent upon the State to negative the exceptions in the statute. The rule is that the exceptions must be nega-

tived only where they are descriptive of the offense or define it, but where they afford matter of excuse merely, and do not define nor qualify the offense created by the enacting clause, they are not required to be negatived. In this case the exceptions are not descriptive of the offense. If the respondent came within either of the exceptions the fact was peculiarly within his knowledge and should have been proved by him as a matter of defense.

*Id.* at 90-91, 37 A. at 235-36. We have had occasion since to apply the *McCaffrey* rule, although without analysis. See, e.g., *State* v. *Dragon,* 130 Vt. 334, 342, 292 A.2d 826, 831 (1972) (entrapment). The *McCaffrey* analysis contains all of the Wigmore considerations, including whether the fact in issue is "peculiarly" within the knowledge of the party.

Applying the *McCaffrey* rule, the State has the initial burden of proving that the criminal act "occurred within the State of Vermont." *State* v. *Huginski,* 139 Vt. 95, 97, 422 A.2d 935, 936 (1980). This element is clearly part of the basic offense. See Vt. Const. ch. II, § 39 (indictments must allege that crime was "against the peace and dignity of the State"). *Huginski* should not be taken as holding that all matters relating to jurisdiction are necessarily part of the State's burden. Allocating the burden of proof in matters relating to jurisdiction, like others, must be weighed under the considerations in *McCaffrey.*

Under both the *McCaffrey* rule and Wigmore's basic principles of allocating the burden of proof, the burden on the "Indian country" issue in the case before us falls squarely on the defendants. The defendants' claim is based on a federal statute. In no sense can we say that proving that the offense did not occur in Indian country is part of the basic definition of the offense of DUI or assault. See McCormick on Evidence § 337 (3d ed. 1984) ("In most cases, the party who has the burden of pleading a fact will have the burdens of producing evidence and of persuading the jury of its existence as well."). In addition, if the State has the burden, it is put in the position of proving a negative. The defendants have the affirmative allegation here. Finally, whether these defendants committed the alleged offenses in "Indian country," or more specifically, in "dependent Indian communities," and whether the tests established by case law to prove this element are met, involves proving elements peculiarly within the

knowledge of the Abenaki Indian tribe and its individual members. As a result, this information is more readily ascertainable by the defendants than by the State.

It is also significant that the majority of other states addressing this issue hold that the defendant bears the burden of proof.[2] In *State* v. *Cutnose,* 87 N.M. 307, 309, 532 P.2d 896, 898 (1974), the Court of Appeals of New Mexico held that "[t]he burden was upon defendant to demonstrate a lack of jurisdiction in the district court." Nevada has a similar rule. In *State* v. *Buckaroo Jack,* 30 Nev. 325, 334, 96 P. 497, 497 (1908), the court held that it was not "incumbent upon the state to prove further than that the offense was committed within the county." The *Buckaroo Jack* court stated the burden of proof simply: "[i]f an exception [to jurisdiction] exists, it must be shown." *Id.* at 335, 96 P. at 497; see also *Pendleton* v. *State,* 103 Nev. 95, 99, 734 P.2d 693, 695 (1987) ("The defendant has the burden of showing the applicability of negative exceptions in jurisdictional statutes."); *Jones* v. *State,* 94 Nev. 679, 680, 585 P.2d 1340, 1341 (1978); *State* v. *Mendez,* 57 Nev. 192, 209, 61 P.2d 300, 305 (1936).

In similar situations courts have held that the defendant must prove lack of jurisdiction in the state court. See, e.g., *Herman* v. *State,* 272 Ind. 361, 363, 397 N.E.2d 978, 979 (1979) (defendant must prove lack of jurisdiction in the state court when claiming that because he was in a U.S. Post Office at the time of offense federal jurisdiction was exclusive). In addition, the case before us is not unlike those where attempts are made to bring actions against foreign governments. Sovereign immunity must be proved by the party claiming it. *In re Sedco, Inc.,* 543 F. Supp. 561, 564 (S.D. Tex. 1982) ("Once a basis for jurisdiction is alleged, the burden of proof rests on that foreign state to demonstrate that immunity should be granted."); accord *De Sanchez* v. *Banco Central De Nicaragua,* 515 F. Supp. 900, 903 (E.D. La. 1981); *Jet Line Services, Inc.* v. *M/V Marsa El Hariga,* 462 F. Supp. 1165,

---

[2] In *State* v. *Dana,* 404 A.2d at 562, the Maine Supreme Court held that "[p]ursuant to [Maine state statute] the State of Maine must come forward with evidence before the presiding Justice, acting without a jury, sufficient to meet the ultimate burden of establishing beyond a reasonable doubt" this evidence. While the test to apply is relevant to the case at bar, neither the statutorily-mandated placing of the burden on the State of Maine, nor the "beyond a reasonable doubt standard," are.

1171 (D. Md. 1978); cf. *Victory Transport Inc.* v. *Comisaria General,* 336 F.2d 354, 360 (2d Cir. 1964).

■ Defendants argue that the jurisdictional issue involves deference to the federal government. In this view federal-state comity requires the state to show its justification for interference in matters that are normally reserved to the fedeeral government. We could accept this policy if there were any evidence of federal involvement or interest in this case. While no developed record on this issue is before us, there is no evidence that the federal government recognizes any part of Vermont as Indian country. Further, the federal government has not recognized the Abenaki tribe as one with which it has a trust relationship. See Comment, *Jurisdiction over Adjudications Involving the Abenaki Indians of Vermont,* 10 Vt. L. Rev. 417, 429 (1985). Thus, to the federal government, the constitutional provision that underlies its responsibility in this area does not apply to the Abenaki tribe or the defendants in this case. U.S. Const. Art. 1, § 8. There is no evidence that the federal government would take any action in this case. We think it inappropriate to ground a burden of proof rule on deference to the interests of another sovereign which, in fact, has no interests in the case before us. This is not deference to another sovereign; it is abdication of responsibility. If defendants prevail, the apparent result is that they will escape all criminal prosecution. While this result may be commanded by the federal-state relationship in Indian affairs, we can think of no policy reason to facilitate it by a special burden of proof rule.

The considerations that are determinative in allocating the burden of proof on the "Indian country" issue are similarly determinative on allocating the burden of proof of whether defendants are Indians. We hold that the defendants bear the burden on both issues by a preponderance of the evidence.

## II.

■ Defendants have also appealed the failure of the trial judge to recuse himself by reason of his ownership of real property within the geographic area which defendants claim to be Indian country.

According to A.O. 10 Canon 3(C)(1)(c), a judge is obligated to disqualify himself in any proceeding "in which his impartiality might reasonably be questioned" including where "he knows that

he . . . has a financial interest in the subject matter in controversy . . . or any other interest that could be substantially affected by the outcome of the proceeding." However, there must be some explanation of how the conduct, activities, or attitudes of a judge are inconsistent with the judge's ability to preside impartially over a cause. See *In re International Business Machines Corp.*, 618 F.2d 923, 927-28 (2d Cir. 1980).

In this case, there is no link-by-link explanation of how the outcome of these criminal prosecutions could affect any financial or other interest of the trial judge. Any such connection is so remote that his impartiality could not reasonably be questioned. See 12 V.S.A. § 61(c).

*Affirmed.*

**Mahady, J.,** dissenting. Today's majority all but ignores controlling acts of Congress, strays beyond the issue presented, and makes unwarranted assumptions of fact entirely dehors the record, thereby reaching a predetermined result. I am unable to associate myself with such a decision, and therefore I dissent.

The issue presented is limited to the allocation of the burden of proof as to the jurisdiction of the State to prosecute a criminal case in the face of a defendant's claim that the alleged offense occurred in "Indian country."

This is an interlocutory appeal by defendants who challenge a pretrial ruling with regard to their motions to dismiss the various criminal charges filed against them for lack of subject matter jurisdiction of the district court. The trial court ruled that defendants bore the burden of proving that they are Indians and that the alleged offenses occurred in "Indian country," as defined by 18 U.S.C. § 1151. I would affirm in part and reverse in part, holding that defendants must bear the initial burden of proving that they are Indians but that the State, upon such a showing, must bear the burden of proving that the alleged offenses did not occur in "Indian country."

## I.

### A.

The State alleges that four misdemeanors and one felony were committed. If the defendants are Indians and if the alleged of-

fenses occurred, as defendants claim, in "Indian country," 18 U.S.C. § 1151, the courts of this state would be prohibited from assuming jurisdiction over the four misdemeanors by reason of the exclusive federal jurisdiction over such offenses in "Indian country" established by 18 U.S.C. § 1152. Vermont courts would likewise be deprived of jurisdiction with regard to the felony by reason of the exclusive federal jurisdiction established by 18 U.S.C. § 1153.

"Indian country" includes Indian reservations, 18 U.S.C. § 1151(a), "dependent Indian communities," 18 U.S.C. § 1151(b), and Indian allotments, 18 U.S.C. § 1151(c). Although defendants concede that there are no Indian reservations nor Indian allotments in Vermont, they claim that the alleged offenses all occurred within a "dependent Indian community."

When Congress included "dependent Indian communities" within the definition of "Indian country," it effectively codified the holding of *United States* v. *Sandoval,* 231 U.S. 28 (1913). Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze,* 18 Ariz. L. Rev. 503, 508 (1976). The criteria which determine whether a particular locale is a "dependent Indian community" include "the nature of the area in question, the relationship of the inhabitants of the area to Indian Tribes and to the federal government, and the established practice of government agencies toward the area." *United States* v. *Martine,* 442 F.2d 1022, 1023 (10th Cir. 1971). Courts have considered "evidence which would tend to prove or disprove the following: (1) that the area in question was primarily used and occupied by Indians; (2) that the Indian group was distinct from the rest of the community; and (3) that the Indian community was dependent upon the federal government for financial resources or general protection." Comment, *Jurisdiction Over Adjudications Involving the Abenaki Indians of Vermont,* 10 Vt. L. Rev. 417, 423-24 (1985) (citing *United States* v. *Levesque,* 681 F.2d 75 (1st Cir. 1982); *United States* v. *South Dakota,* 665 F.2d 837 (8th Cir. 1981)).

Therefore, under § 1151(b), the existence and dependent nature of the affected Indian community must be established as a question of fact. See *United States* v. *Martine,* 442 F.2d at 1023-24. The issue presented by this appeal is whether the State or the defendants bear the burden of proof as to the establishment of the jurisdictional facts.

## B.

Considerations of federal-state comity as well as respect for our federal system require us to approach the issue with caution. The allocation of authority over Indian affairs is established by federal statutes and treaties. *McClanahan* v. *Arizona State Tax Commission,* 411 U.S. 164, 165 (1973). On the subject of Indian country jurisdiction the federal role is "dominant." See F. Cohen, *Handbook of Federal Indian Law* 282 (1982).

Federal policy has long favored tribal self-government and federal protection, which are important aspects of the trust relationship between the tribes and the United States. F. Cohen, at 361. Recognizing the congressional determination that state jurisdiction erodes both tribal self-government and federal protection, the Supreme Court has held that any congressional purposes to delegate Indian country jurisdiction to a state must be clearly and specifically expressed. *Bryan* v. *Itasca County,* 426 U.S. 373, 392 (1976); see also *Washington* v. *Confederated Bands & Tribes of the Yakima Indian Nation,* 439 U.S. 463, 484 (1979); *Menominee Tribe* v. *United States,* 391 U.S. 404, 413 (1968). In short, "[f]ederal protection of tribal self-government precludes either criminal or civil jurisdiction of state courts over Indians or their property absent the consent of Congress." F. Cohen, at 349 (citing *United States* v. *John,* 437 U.S. 634, 652-54 (1978); *Fisher* v. *District Court,* 424 U.S. 382, 386-87 (1976). Since *Worcester* v. *Georgia,* 31 U.S. (6 Pet.) 515 (1832), the Supreme Court has consistently held that the states may not apply their own laws to Indians in Indian country without the consent of the United States, the Indians, or both.

In 1953 Congress enacted Public Law 83-280. Act of Aug. 15, 1953, ch. 505, 67 Stat. 588 (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321-1326; 28 U.S.C. § 1360). The Act delegated, in mandatory terms, to certain enumerated states, not including Vermont, jurisdiction over most crimes and many civil matters throughout most of the Indian country within their borders. The Act also offered any other state the option of accepting the same jurisdiction. See generally Goldberg, *Public Law 280: The Limits of State Jurisdiction Over Reservation Indians,* 22 UCLA L. Rev. 535 (1975). Although ten of the optional states acted to accept some degree of jurisdiction under the Act's provisions, see F. Cohen, at 362, n. 125, Vermont did not.

We must therefore be mindful of the dominant federal role in Indian affairs, the long-standing and judicially-recognized federal policy against state jurisdiction over Indians in Indian country, and the decision of the State of Vermont not to accept such jurisdiction when offered the opportunity to do so by Public Law 280.

## C.

Courts in other jurisdictions have taken two different approaches to resolve the burden-of-proof issue. The Supreme Judicial Court of Maine has held that "the State of Maine must come forward with evidence . . . sufficient to meet the ultimate burden of establishing beyond a reasonable doubt" that the location of the alleged criminal offense was not in Indian country. *State* v. *Dana*, 404 A.2d 551, 562 (Me. 1979). However, that holding was predicated solely upon a Maine statute, then 17-A M.R.S.A. § 5, since recodified as 17-A M.R.S.A. § 7, which specifically provides that "[t]he existence of territorial jurisdiction must be proved beyond a reasonable doubt." Vermont has no such statute.

The Supreme Court of Nevada has held that it is not necessary in a state criminal prosecution for the State "to negative the jurisdiction of the United States"; rather the State need only show that the offense occurred within its territorial borders, and it then becomes the burden of the defendant to prove that it occurred in Indian country. *State* v. *Buckaroo Jack*, 30 Nev. 325, 334-36, 96 P. 497, 497-98 (1908). The Nevada court has also held that the State is not required to prove that the accused was not an Indian, but rather, "the accused" is required "to shoulder the burden of establishing his Indian ancestry . . . ." *Jones* v. *State*, 94 Nev. 679, 680, 585 P.2d 1340, 1341 (1978); see also *State* v. *Cutnose*, 87 N.M. 307, 309, 532 P.2d 896, 898 (1974) (burden on defendant to demonstrate lack of jurisdiction on grounds that the crimes were committed within Indian country).

The Nevada court predicated its holdings on the theory that the jurisdiction of the state court was general, whereas the jurisdiction of the federal court was limited only to cases where the offense was committed in Indian country. It concluded that "[w]here the state jurisdiction is general, and that of the federal government is special and limited," the State should not be required "to negative" the special and limited federal jurisdiction. *State* v. *Buckaroo Jack*, 30 Nev. at 334, 96 P. at 497-98. It did not

recognize, nor did it discuss, the important concerns of comity and federal Indian policy noted above nor did it consider the dominant federal role in Indian affairs under the Supremacy Clause of the United States Constitution. Today's majority adopts the cavalier attitude of the Nevada court with regard to these issues.

The Maine court's exclusive reliance upon that state's statute, which has no Vermont counterpart, and the Nevada court's failure to consider important concerns lead to the conclusion that neither line of cases is particularly helpful to an appropriate resolution of the issue.

### D.

In Vermont, the State has always been required to establish the jurisdiction of the court in a criminal prosecution. See Vt. Const. ch. II, § 39; V.R.Cr.P. 12(b)(2); *State* v. *Huginski,* 139 Vt. 95, 97, 422 A.2d 935, 936 (1980); *State* v. *Longway,* 137 Vt. 165, 167, 400 A.2d 1002, 1003 (1979).\* As noted above, the court would be without jurisdiction in this case if defendants are Indians and if the alleged offenses occurred in Indian country, specifically in a "dependent Indian community" as that term is used in 18 U.S.C. § 1151(b).

To require the State to prove that defendants are not Indians would require the State to establish a fact involving defendants' personal ancestry and family history with regard to which most of the knowledge and evidence is uniquely more available to defendants. It is therefore appropriate that the defendants should bear the burden of proof to establish that they are Indians. Cf. *People* v. *Prichard,* 162 Cal. App. 3d Supp. 13, 16, 209 Cal. Rptr. 314, 316 (1984) (when an exonerating fact is peculiarly within defendant's knowledge, initial burden of proof is placed on defendant). I would accordingly hold (as does the majority) that in a challenge such as this to the jurisdiction of a state court, defendants must bear the burden of going forward in the first instance to present evidence sufficient to establish that they are Indians by a prepon-

---

\* The majority, in an attempt to find support for its position, reaches back to 1896 for a case not in point. *State* v. *McCaffrey,* 69 Vt. 85, 37 A. 234, has nothing to do with jurisdiction; rather the issue before the *McCaffrey* court involved statutory factors which excuse conduct which would otherwise be criminal.

derance of the evidence. Should defendants fail to establish that fact in this manner the jurisdictional challenge must fail.

Unlike the geneology of a particular defendant, however, evidence and knowledge as to the relevant criteria for determining whether there exists a "dependent Indian community" are as available and accessible to the State as to defendants, if not more so. These factors include "the nature of the area in question, the relationship of the inhabitants of the area to Indian Tribes and to the federal government, and the established practice of governmental agencies toward the area." *United States* v. *Martine,* 442 F.2d at 1023. To be considered is "evidence which would tend to prove or disprove the following: (1) that the area in question was primarily used and occupied by Indians; (2) that the Indian group was distinct from the rest of the community; and (3) that the Indian community was dependent upon the federal government for financial resources or general protection." 10 Vt. L. Rev. at 423-24.

All of these factors are objective historical and sociological facts. Such facts are open and available to all, especially to a party with the virtually unlimited resources of the State. However, the majority (with a total absence of analysis or even discussion) blandly assumes that such matters are "peculiarly within the knowledge of the Abenaki Indian tribe and its individual members." This naked assertion underpins the majority's position. It is difficult to conceive a weaker foundation. Perhaps Abenakis are more accomplished historians and sociologists than non-Abenakis; if so, such does not appear from the record.

Therefore, in the interest of federal-state comity, deference to federal authority in Indian affairs, and recognition of long-standing judicially recognized federal policy, I would hold that the State must bear the burden of proving that the alleged crimes did not occur in Indian country provided defendants have first established by a preponderance of the evidence that they are Indians.

## II.

The majority virtually ignores federal supremacy in Indian affairs and well-established judicial recognition of the need for state deference to federal policy. Such judicial recognition dates back to John Marshall. *Worcester* v. *Georgia,* 31 U.S. (6 Pet.) 515. Having waged genocidal warfare against the native inhabitants of

this continent, see Utley, *The American Way of War*, the European majority has belatedly, and all too often ineffectively, created a special trust relationship between the federal government and Native Americans. Today, this Court violates that trust.

The majority substitutes a series of irrelevancies for careful analysis (or much of any analysis at all, for that matter) of the federal statutes and policies. The most egregious example is the subtle overstatement of the issue involved in this appeal. That issue is limited to the allocation of proof as to state criminal jurisdiction. Yet, the majority for no apparent reason assumes that the State will not be able to prove its right to assume criminal jurisdiction in this case. It concludes (with, it would appear, a touch of xenophobia) that deference to federal policy would allow these defendants to "escape all criminal prosecution." This explicit result-oriented concern is at least premature; in the event, the State may well carry its appropriate burden of proof. Moreover, our neighboring state of Maine almost a decade ago placed the jurisdictional burden of proof on the State; to date, there have been no reports of anarchy.

Likewise, the majority prematurely emphasizes the lack of evidence "that the federal government recognizes any part of Vermont as Indian country." If true (this record being silent on the matter), an historical lack of significant relationships between the federal government and the Abenaki Tribe would be an important fact supporting the state's assumption of criminal jurisdiction in a hearing on remand. However, it simply had nothing to do with the issue before the trial court, which explains the lack of a record. Likewise, it is irrelevant to the issue before us. The majority shows undue haste to allow the state to head the Indians off at the pass rather than fairly defeat them, if it can, in a battle fought on level ground.

Similarly unhelpful is the underlying implication that the State should not be required to negative a positive. As with most cliches, this one does not withstand analysis. The fact is that the State is often required to negative a positive. The most common of many such examples are the requirement that the State prove beyond a reasonable doubt the absence of authority or consent in a prosecution for unlawful trespass, 13 V.S.A. § 3705(a), and the requirment that the State prove beyond a reasonable doubt the absence of consent in a prosecution for sexual assault, 13 V.S.A. §

3252(1)(A). The State routinely carries such burdens of proof with success.

The majority''s claim that its position is supported by "the majority of other states addressing the issue" is disingenuous. That "majority" consists of cases from Nevada and New Mexico, courts which have adopted the same cavalier attitude toward the federal government-Native American trust relationship as does today's majority of this Court. On the other hand, the Supreme Judicial Court of Maine has in a similar case forthrightly applied its local statute allocating the jurisidictional burden of proof without fear or favor. This Court should likewise apply clear federal law and policy to this case.

Fundamentally, the majority jumps the gun in its desire to protect our European majority from some anticipated depredations of our Native American minority. While such fear is ephemeral, its existence apparently makes this a hard case. The majority's decision proves yet again the axiom, "hard cases make bad law." *Northern Securities Co.* v. *United States*, 193 U.S. 197, 400 (1904) (Holmes, J., dissenting).

### On Motion For Reargument

In response to appellants' December 15, 1988, motion for reargument, the opinion of the Court is recalled to delete Footnote 3 and to correct an inaccuracy in the statement of the position of defendants. The revision does not change the result previously reached.

The motion for reargument is denied; appellants' supplemental motion is denied as untimely.