2004 SD 9

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**John BALL, Defendant and Appellant.**

No. 22343.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 2003.

Reassigned April 29, 2003.

Decided Jan. 21, 2004.

Lawrence E. Long, Attorney General, Grant Gormley, Assistant Attorney Gener-al, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Bryan T. Andersen, Office of the Public Defender for Pennington County, Rapid City, South Dakota, Attorney for defendant and appellant.

ZINTER, Justice (on reassignment).

[¶ 1.] John Ball was convicted on two counts of first degree rape. On appeal, he asserts that the trial court erred in: (1) denying his request for a mistrial for a discovery violation; (2) denying him access to Department of Social Services records; (3) denying his motion for a judgment of acquittal on one count of the indictment; (4) denying his request for a mistrial because the prosecutor commented on his failure to testify; and (5) imposing a cruel and unusual punishment. Because we conclude that the prosecutor improperly commented on Ball's constitutional right to remain silent, we reverse and remand on Issue 4. We also review the discovery question in Issue 2.

## Background

[¶ 2.] We relate the facts in a light most favorable to the verdict. *State v. Hage*, 532 N.W.2d 406, 410 (S.D.1995). On December 29, 2000, Tonya Arendt, the mother of M.B., contacted Box Elder Police Detective Chris Misselt. She informed him that M.B. had made allegations of sexual abuse by John Ball, M.B.'s father.[1] Arendt was concerned because M.B. reported two incidents of Ball "sniffing" her during visitations that year. On January 1, 2001, Misselt interviewed M.B. In the interview, M.B. reported seven incidents of inappropriate contact by Ball, including the two allegations of sexual penetration that are the subject of Ball's rape convictions in this appeal.

---

1. M.B.'s mother, Tonya Arendt, and father, John Ball, had dated for six years, but had been separated for some time. Ball had visitation rights.

[¶ 3.] The first incident allegedly occurred on a day the two were involved in a vehicular accident. Although M.B. believed that it occurred some time in February 2000, it was later determined that the accident occurred on January 1, 2000. On that day, Ball's car struck two concrete poles and ruptured a gas line. Ball and M.B. left the scene of the accident before the police arrived and proceeded to the Dakota Rose Motel where they were staying. After returning to the motel, M.B., age eight at the time, began to take a shower. According to M.B., when she asked Ball to bring her a towel, he came into the bathroom, disrobed and got into the shower with her. She indicated that Ball got down on his knees and took her by the hips and began to "lick her privates," sticking his tongue and fingers into her. Although M.B. indicated that she escaped from the bathroom, sexual activity continued. She alleged that she later went to bed, but awoke to find herself naked and felt her father pulling her legs apart and inserting his tongue in her. Around one or two that morning, while Ball was asleep, Arendt picked M.B. up at the motel and took her home. M.B. did not apparently report this incident at that time.

[¶ 4.] M.B. testified that the second incident occurred on Christmas Eve, December 24, 2000. On this occasion, M.B. was visiting Ball at his apartment in Box Elder. She indicated that during the visit, Ball "kissed, licked and sucked her private parts" and "rubbed his penis on her butt." However, actual penetration sufficient to constitute rape became a matter of dispute in M.B.'s subsequent statements and testimony at trial.

[¶ 5.] The first of M.B.'s subsequent statements was made four days after M.B. first reported the Christmas incident. On this occasion, she spoke to school counselor John Barnett about the matter. M.B. told Barnett that while she was visiting Ball on Christmas Eve, he kissed, licked, and sucked her private parts. Barnett testified to this conversation at trial.

[¶ 6.] Dr. Lori Strong conducted a physical examination of M.B. on March 13, 2001. Although M.B. denied any sexual penetration of her mouth or vagina in this statement, and although M.B. denied any anal penetration at trial, she reported to Dr. Strong that Ball had penetrated her anally with his penis during the Christmas incident.

[¶ 7.] M.B.'s initial reports to Detective Misselt were turned over to Pennington County Deputy Sheriff Misti Gray. Gray first met with Ball on February 21, 2001, but no specific questions were asked. Later, on March 2, 2001, Ball contacted Gray's office and asked to speak with her. Ball repeatedly denied his daughter's allegations, specifically denying any of the rape allegations while saying that he did not remember other things. At one point, when asked if his child had been lying, he replied, "She is not lying. I am not lying. I just don't remember." Ball also conceded that "[s]ome of the things" were true. He said he was sorry he "hurt her." Ball expressed his wish to not go to jail. He was later arrested and made an initial appearance on March 26, 2001.

[¶ 8.] At trial, the State called M.B., Arendt, Barnett, Dr. Strong, Misselt, Gray, Officer Johns, and Kay Lindgren as witnesses. The defense witnesses were Lynette Barse and Troy Fegueroa. Ball did not testify. The jury found Ball guilty on both counts of first degree rape of a child less than ten years of age. He appeals, asserting the following issues: (1) "The trial court erred in denying Ball's motion for a mistrial for the violation of the discovery order and failure of the State to give proper notice under the medical exception to the hearsay rules." (2) "The

trial court erred in denying Ball access to the requested Department of Social Services records." (3) "The trial court erred in denying Ball's motion for a judgment of acquittal on count II of the indictment." (4) "The trial court erred in not finding the prosecutor's comments during closing arguments about the fact that Ball did not testify improper and denying Ball's motion for a mistrial." (5) "The trial court's sentence shocks the conscience and constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." We address Issue 2 (discovery) and Issue 4 (prosecutorial comments).

### Discovery of DSS Records

 [¶ 9.] The trial court performed an in camera review of the confidential Department of Social Services (DSS) records and found nothing of relevance. Ball asks us to review the sealed records to ensure that the trial court did not err in its review. We review a trial court's decision on release of confidential records under an abuse of discretion standard. *State v. Cates*, 2001 SD 99, ¶ 17, 632 N.W.2d 28, 36.

[¶ 10.] Our review of the one thousand pages reflects that most of the material was irrelevant. However, we found the following: "Ann [the mother of a child named 'R'] stated that [R] has been helpful with a girlfriend [M.B.] that confided in [R] about some sexual abuse and that she may have to testify in court. Ann stated that many of [R's] friends feel comfortable in talking with her about their problems."

[¶ 11.] While this passage may have been relevant, nothing in this note suggests that M.B. gave a contradictory rendition of events to R. More importantly, R's name was listed in the police report attached to the complaint along with a rendition of what M.B. told her. R was also subpoenaed to testify at a June 18, 2001 evidentiary hearing. She did not, however, testify. Both the subpoena and the police report are in the record. Thus, the defense had knowledge of R, what M.B. had purportedly told her, and what R reported to law enforcement. Therefore, the trial court was within its discretion in refusing to open the confidential DSS records.

### Request for Mistrial—Prosecutor's Comments on Ball's Refusal to Tell "Us" What Happened

 [¶ 12.] Although Ball did not testify, the prosecutor made three comments in closing argument that Ball **"knows [not knew] what happened."** The prosecutor also pointed out that Ball admitted some things, and then the prosecutor asked the rhetorical question **"what's true John?"** The prosecutor concluded by conceding that **although there was no physical evidence of trauma, Ball "knows what happened, but he's not talking. He's not telling us what happened."** The prosecutor specifically commented:

So again, folks, look at what's going on. [M.B.] was there. In the traffic accident [M.B.] is a fine witness for him. Now when she says he molested her and raped her, [M.B.] is lying and making it up and out to get him. Don't get lost in all this, all this smoke that's being put up. *Mr. Ball knows what happened* and we know that by his statements. He can't hide from those.

He told Misti Gray that some of the things are true, some of the allegations, "Tell my daughter I'm sorry I hurt her." He said he didn't want to go to jail and he needed a psychiatric ward, he needed counseling. Again, look at the parameters of which he was talking about, allegations of a rape. He's saying that he doesn't want to go to jail. That was what he followed up with when he said, "Some of the things are true." *"What's*

*true, John* ?" "I don't want to go to jail." For running around naked and handing your daughter a towel, you're going to jail?

*The defendant knows what happened. He raped her.* He wouldn't tell law enforcement. He stopped giving the details as far as the allegations, although some of the allegations are true.

Defense will point out there's no signs of trauma on [M.B.]. Again, that's been brought out. Dr. Strong stated it's very [un]common you'll have any sort of damage on a child for rape. We talked about that in voir dire. It doesn't happen all the time. This wasn't a forced act. This wasn't something that left scars or injuries or bruising. The examination took place sometime thereafter, but even so, pen[ile] penetration, the doctor said that wouldn't leave anything. It's a flexible opening. Oral contact with genitals, common sense, folks, that's not going to leave anything whatsoever. Finger penetration, again, that's not going to do it because there's different levels of the vaginal area where the hymen is. It's not going to leave scarring. **The defendant *knows* what happened, *but he's not talking. He's***

*not telling us what happened.* As far as he'll say, "Some things are true." (Emphasis added.) This was not the only improper comment by the prosecution on Ball's failure to tell "**us**" (the court and jury) what happened. Earlier, without objection, the prosecutor told the jury:

Folks, allegations is what he knew was coming at him: first degree rape, oral sex, placing a penis next to a butt. It wasn't running around a room naked. Is that an allegation? It wasn't handing a daughter a towel that was an allegation. Watching him masturbate, that's not an allegation. He said the allegations, that some of the allegations, some things were true. *Would he tell **us** anymore? No, he wouldn't.*[2]

[¶ 13.] Significantly, these present tense comments stood in stark contrast to the prosecutor's other permissible comments on Ball's past statements to Misti Gray. Later in his argument, after the defense objection was made, the prosecutor clearly demonstrated his ability to make a permissible past tense comment on Ball's lack of memory with Misti Gray. The prosecutor argued:

Ladies and gentlemen, defense went through and said the defendant denied

---

**2.** This cited comment undercuts the dissent's assertion that all of the prosecutor's statements were part of a consistent theme *only* involving permissible comment on the subject of past statements made to Misti Gray. It is suggested that all prosecutorial comments were a part of this theme that existed from opening statement through final argument. It is therefore suggested that the comments at issue must have related to that permissible theme. *See infra* ¶¶ 44, 45, 46, and 56. However, the clearly unconstitutional comment cited here was made before the present tense comments now under review. Moreover, the highly objectionable statements were "but he's not talking. He's not telling us what happened," and these comments have no relation to Ball's interview with Misti Gray. On the contrary, Ball did not "stop talking," de-

cline, or refuse to "tell Misti Gray what happened." Instead, he merely told Misti Gray "he could not remember some things."

Consequently, this record does not establish one continuing "theme" of appropriate prosecutorial comment about the Misti Gray interview. Rather, the prosecutorial comments about actual knowledge of what happened, but *refusing to tell*, were not events that occurred with Misti Gray. Furthermore, this earlier prosecutorial argument reflects other unequivocal comment on Ball's present silence in front of the jury: "Would he tell us any more. No he wouldn't." Therefore, the statements now at issue were not just made as a continuing reference to Ball's prior statement to Misti Gray. *See infra* ¶ 45.

the specific allegations, pen[ile] contact, digital contact, oral contact, but yet, again, *he told* Misti Gray that some of the allegations are true. Those are the exact *allegations defense said he denied.* He didn't deny them. He wouldn't go into detail about what allegation was true. The allegations were oral contact on the day of the Dakota Rose Motel and pen[ile] contact after Christmas. *He said* those didn't happen, but then in the same breath *he said,* "Some of the allegations are true. Some things [M.B.] said are true."

(Emphasis added.)

[¶ 14.] Ball only objected after the first series of comments cited in ¶ 12. Defense counsel approached the bench and, in an off the record discussion, preserved an objection and a mistrial motion.[3] Defense counsel then presented Ball's closing argument. When arguments were completed and the jury began deliberations, counsel made her record objection and motion for mistrial based on the prosecutor's comments. Counsel argued that the prosecutor's statements were an impermissible present tense comment on the defendant's failure to testify: defendant "knows," (not "knew,") what happened, but he's not talking, he's not telling "us" what happened.

> THE COURT: Ms. Harris, during closing you indicated you wanted to preserve your record on a point. You can do that now.
>
> MS. HARRIS: Thank you, Your Honor. Your Honor, during closing [the prosecutor] made a statement. I wrote it down. ***"He's not talking" was in the present tense.*** As defense counsel,

we're in this dilemma at that time whether to object and draw attention to the matter and make it even more pronounced for the jury or so preserve the issue. I asked the Court if we could preserve the issue at this time.

> Of course, it is an impermissible comment by the prosecutor on the defendant not taking the stand and testifying. *What's significant about the statement that he made was that it was in the present tense.* ***It was not in a reference to the statement made to Misti Gray and, therefore, it was inappropriate.*** That's the basis of our motion, Your Honor.

(Emphasis added.)

[¶ 15.] In response, the prosecutor argued that he had only commented on Ball's statements to Misti Gray; i.e., that some of what M.B. said was true, but defendant would not specify to Misti Gray what was true.[4] The trial court, also basing its decision upon the comments to Misti Gray, agreed. The court denied the motion, stating that the comment was "in direct reference to Misti Gray's testimony." Ball appeals, contending that the prosecutor's comments were an impermissible reference to the defendant's present tense knowledge of what happened and his refusal to testify, and therefore, they violated his Fifth Amendment right against self-incrimination.

■■ [¶ 16.] Ordinarily, "[t]he denial of a motion for mistrial will not be overturned unless there is an abuse of discretion. Motions for mistrial are within the discretion of the trial judge[.]" *State v. Johnson,* 2001 SD 80, ¶ 9, 630 N.W.2d 79,

---

3. It is unclear from the record exactly what was said in the off the record discussion. However, we address this issue as a motion for mistrial because the briefs indicate it was a motion for mistrial.

4. A review of the final arguments reflect that this prosecutorial response related to the type of permissible comment cited at ¶ 13 rather than the impermissible comments cited at ¶ 12.

82 (quoting *State v. Alidani,* 2000 SD 52, ¶ 9, 609 N.W.2d 152, 155). However, this case does not involve trial court fact finding. The sole issue here is whether the prosecutor's comments on Ball's failure to testify violated the Fifth Amendment guarantee against self-incrimination. Therefore, the central question in this case is whether the factually undisputed comments cited in ¶ 12 violated Ball's constitutional rights.

[¶ 17.] The United States Supreme Court has specifically held that "the Fifth Amendment ... forbids ... comment by the prosecution on the accused's silence." *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965). The Supreme Court noted that "comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice' which the Fifth Amendment outlaws." *Id.* at 614, 85 S.Ct. 1229 (quoting *Murphy v. Waterfront Comm.,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678, 681 (1964)). Therefore, "[i]t has long been the law in this state that it is *reversible error* for the prosecution to call to the attention of the jury the failure of the defendant to testify." *State v. Strickland,* 87 S.D. 522, 529, 211 N.W.2d 575, 580 (1973) (emphasis added) (citing *State v. Brown,* 81 S.D. 195, 132 N.W.2d 840 (1965); *State v. Wolfe,* 64 S.D. 178, 266 N.W. 116 (1936)).

[¶ 18.] If the cited comments violated Ball's Fifth Amendment rights, it is reversible error. Therefore, the sole question in this case involves a constitutional question, which is a matter of law. Such questions of law involving Fifth Amendment constitutional questions are considered under a different standard of review. *See State v. Stanga,* 2000 SD 129, ¶ 8, 617 N.W.2d 486, 488 (applying a deferential standard to the underlying factual determinations, but independent review of the ultimate Fifth Amendment question). The *Stanga* de novo standard of review of Fifth Amendment constitutional questions is in accord with our standard of review of other constitutional questions. We have noted that "[o]ur review of a motion to suppress based on an alleged violation of a constitutionally protected right is a question of law examined de novo." *State v. Lamont,* 2001 SD 92, ¶ 12, 631 N.W.2d 603, 607 (citing *State v. Hirning,* 1999 SD 53, ¶ 9, 592 N.W.2d 600, 603; *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920 (1996) (standard of review for questions under the Fourth Amendment); *United States v. Khan,* 993 F.2d 1368, 1375 (9th Cir.1993)). *See also State v. Herrmann,* 2002 SD 119, ¶ 9, 652 N.W.2d 725, 728; *State v. Hodges,* 2001 SD 93, ¶ 8, 631 N.W.2d 206, 209; *State v. Brassfield,* 2000 SD 110, ¶ 10, 615 N.W.2d 628, 631. We have also applied this review in other Fifth Amendment contexts ("constitutional safeguard[ ] against involuntary confessions"). *State v. Morato,* 2000 SD 149, ¶ 11, 619 N.W.2d 655, 659. In considering Fifth Amendment violations, we have specifically held that it is " 'a legal question, requiring *independent judicial review.*' " *Id.* (citations omitted) (emphasis added).

[¶ 19.] Other courts also apply a de novo standard of review of constitutional violations. For example, the Supreme Court of Iowa reviews claimed constitutional violations de novo. *Iowa v. Gardner,* 661 N.W.2d 116, 117 (2003). Maryland holds that "[i]f the facts as found by the trier of fact are not clearly erroneous, our review of the application of the law to those facts, such as where impingement on an individual's constitutional rights may be in question, is *de novo.*" *Polk v. Maryland,* 378 Md. 1, 835 A.2d 575, 579 (2003) (further citations omitted). North Dakota holds that "our standard of review for a claimed violation of a constitutional right is

de novo." *North Dakota v. Messner,* 1998 ND 151, ¶ 8, 583 N.W.2d 109, 111 (citing *North Dakota v. Wicks,* 1998 ND 76, ¶ 17, 576 N.W.2d 518). Wyoming holds: "we apply a de novo standard of review to claims of constitutional violations." *Sincock v. Wyoming,* 2003 WY 115, ¶ 19, 76 P.3d 323, 332.

[¶ 20.] The federal courts agree. The Eighth Circuit Court of Appeals holds that "the ultimate issue of whether a constitutional violation has occurred is subject to ... de novo review." *Stallings v. Delo,* 117 F.3d 378, 380 (8th Cir.1997) (agreeing with petitioner that the issue of whether facts relevant to his Fourteenth Amendment due process claim gave rise to a violation of his right to due process is subject to de novo review). The dissent's reliance on United *United States v. Triplett,* 195 F.3d 990 (8th Cir.1999) is misplaced. *See infra* ¶¶ 47, 49. Although *Triplett* utilized the abuse of discretion standard in reviewing prosecutorial misconduct in closing argument, it recognized that "[i]t is *also* well established that prosecutorial *misconduct occurs* when the prosecutor comments at trial, directly *or indirectly,* on the defendant's failure to testify." *Triplett,* 195 F.3d at 995 (emphasis added) (citing *Sidebottom v. Delo,* 46 F.3d 744, 759 (8th Cir.1995)). Thus, under *Triplett,* if a constitutionally impermissible comment on the defendant's failure to testify is made, prosecutorial misconduct has occurred, and a new trial is required. We finally note that the Ninth Circuit has applied de novo review in some of its cases:

> Although we usually review a trial court's discretion in controlling closing arguments for an abuse of discretion, *United States v. Guess,* 745 F.2d 1286, 1288 (9th Cir.1984), *cert. denied,* 469 U.S. 1225, 105 S.Ct. 1219, 84 L.Ed.2d

360 (1985), the issue here involves alleged violation of fifth amendment rights presenting a question of law subject to de novo review. *See United States v. McConney,* 728 F.2d 1195, 1202–04 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

*United States v. Schuler,* 813 F.2d 978, 980 (9th Cir.1987). *See also United States v. Mares,* 940 F.2d 455, 461 (9th Cir.1991) (stating "[w]e review a claim that the prosecutor's closing argument violated the appellant's fifth amendment rights de novo"); *United States v. Gray,* 876 F.2d 1411, 1416 (9th Cir.1989) (reviewing such a claim "independently and non-deferentially"), *cert. denied,* 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990).

■ [¶ 21.] Considering our own application of the de novo standard of review in similar Fifth Amendment questions, *see Stanga, supra* ¶ 18, we review the quoted statements de novo. This is not to say that we no longer defer to trial courts on their firsthand impressions and findings of fact. *See* dissent at ¶ 52 (relying upon a civil case [5] involving a trial court's affirmative *attempts to correct* non-constitutional error in closing argument). On the contrary, "[w]e review findings of fact under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. [And,] an alleged violation of a constitutionally protected right is a question of law reviewed de novo." *Hodges,* 2001 SD 93, ¶ 8, 631 N.W.2d at 209 (internal citations omitted).

■ [¶ 22.] We next turn to the substantive test to determine whether the prosecutorial comments on a defendant's silence violate the Fifth Amendment. *See*

5. *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778 (5th Cir.1983).

*Butler v. Rose,* 686 F.2d 1163, 1170 n.6 (6th Cir.1982) (discussing "universal application" of the test). "[T]he test is whether the language used [by the prosecutor] was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir.1955). *See also United States v. Sanders,* 547 F.2d 1037, 1042 (8th Cir.1976); *United States v. Lyon,* 397 F.2d 505, 509 (7th Cir.1968) (citing *Knowles* ), *cert. denied,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117. Although the *Knowles* test has yet to be adopted in South Dakota, many states embrace this rule.[6] Today, we adopt this test.

[¶ 23.] Accordingly, in reviewing a prosecutor's challenged comment, we first examine whether it was the prosecutor's "manifest intention" to refer to the defendant's silence. A prosecutor's intent is not "manifest" if there is an equally plausible explanation for the prosecutor's remarks. *United States v. Collins,* 972 F.2d 1385, 1406 (5th Cir.1992), *cert. denied,* 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993). Furthermore, challenged remarks must be considered in the context in which they were made. *United States v. Montoya–Ortiz,* 7 F.3d 1171, 1179 (5th Cir.1993).

[¶ 24.] Under prosecution's manifest intent inquiry, one could accept the state's argument that part of the prosecutor's two *initial* comments (Ball "knows" what happened) related to the Misti Gray interview and were therefore not "manifestly intended" to be a comment on the defendant's failure to testify. As the trial court found, "I heard *the statement* [a singular, not plural reference] and *it* was *in direct reference* to Misti Gray's testimony, *what Mr. Ball discussed with her,* and [the prosecutor] was summarizing the events in the arguments and says he's not talking … *it* was not *intended* to be in the present tense and reference to Mr. Ball not taking the stand." (Emphasis added.)

[¶ 25.] However, this finding of an *unintentional* and *singular* comment relating to Misti Gray does not end the inquiry because the prosecutor went beyond one comment on statements made (and not made) to Misti Gray. Moreover, we must also examine all comments under the second prong of *Knowles* to determine if they were "of such character that the jury would naturally and necessarily take [them] to be a comment on the failure of the accused to testify." *Knowles,* 224 F.2d at 170. Or, as we have previously stated "[w]hen the comments are indirect allusions, the test is whether a reasonable intelligent jury would understand these to point out defendant's failure to testify."

6. *See, e.g., People v. Arman,* 131 Ill.2d 115, 137 Ill.Dec. 5, 545 N.E.2d 658 (1989); *People v. Hopkins,* 52 Ill.2d 1, 284 N.E.2d 283, 286 (1972) (The question is "whether 'the reference (was) intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify.' ") (quoting *Watt v. People,* 126 Ill. 9, 18 N.E. 340, 350 (1888)); *State v. Cooper,* 52 Ohio St.2d 163, 370 N.E.2d 725, 733 (1977), *vacated on other grounds,* 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157 (1978) (applying *Morrison–Knowles* standard); *People v. Guenther,* 188 Mich.App. 174, 469 N.W.2d 59, 62 (1991) (same); *People v. Ebejer,* 66 Mich.App. 333, 239 N.W.2d 604, 611 (1976) ("There was no deliberate attempt on the part of the prosecutor to coerce the testimony of the accused or to invite the jury to draw adverse inferences in the event the defendant declined to testify."); *Tinsley v. Commonwealth,* 495 S.W.2d 776, 782 (Ky.1973) ("The test as concerns indirect comments is whether the comment is reasonably certain to direct the jury's attention to the defendant's failure to testify."); *Anderson v. Commonwealth,* 353 S.W.2d 381, 386 (Ky.1961) (same).

*State v. Wilson,* 297 N.W.2d 477, 482 (S.D. 1980) (citing *State v. Winckler,* 260 N.W.2d 356 (S.D.1977)).[7]

[¶ 26.] Unfortunately, this second inquiry is complicated by the fact that Ball objected during closing arguments, but was permitted to obtain a trial court ruling after the jury was deliberating. Consequently, while the trial court's ruling on one comment made concerning Misti Gray may have been accurate, the record reflects that it was only a part of a string of improper comments, in addition to the one ruled on by the trial court. A review of the final argument actually reveals four comments made at the time of the objection. *See supra* ¶ 12. In chronological order the four comments were:

(1) a present tense comment that the defendant *"knows"* (not knew) what happened;

(2) a present tense rhetorical question asking the jury "what's true John?";

(3) two more references to the fact that the defendant *"knows"* (not knew) what happened; and

(4) the concluding comment *"but he's not talking. He's not telling us* what happened."

(Emphasis added.)

[¶ 27.] Had the trial court reviewed the entire string of present tense references to Ball's knowledge, which included (1) the rhetorical question asking the jury "what's true, John" and (2) the concluding comment "but he's not talking. He's not telling us what happened," it would have granted the mistrial. The record reflects it would have done so because the trial

court expressly ruled that "[h]ad the prosecutor made a *direct comment,* '[t]here sits the defendant and he hasn't said a word about this,' that would have been an entire *present tense* context and I'd be granting your motion." (Emphasis added.) Because the prosecutor made many such present tense comments, coupled with a rhetorical question to the jury and the specific comment that Ball was not telling "us" (the jury) what happened, the mistrial motion must be granted.

[¶ 28.] This conclusion is justified giving the prosecutor's comments the required review in context. A contextual review reveals that the first comment was made in the first paragraph of the quoted comments. In that paragraph, the prosecutor was not discussing Ball's statements to Misti Gray. Instead, he was discussing Ball's defense that the victim was lying. The prosecution responded to that defense by encouraging the jury to not get lost in "all this smoke that's been put up" because *"Mr. Ball knows what happened ...."*

[¶ 29.] As the trial court pointed out, the prosecutor then began the argument that involved statements Ball made to Misti Gray ("and we know that [Ball knows what happened] by his statements"). Although there were subsequent references to various statements Ball made (and didn't make) to Gray, the prosecutor responded by rhetorically asking the jury *"What's true John ?"* Although a rhetorical question has generally not constituted reversible error when the question is vaguely phrased such as "and what has the *defense* had to say?," that is not the case when the

---

7. Although the dissent suggests a different standard (that the statement "had to be so worded that a jury *must* construe [them] wrongly, not that any jury reasonably could" *infra* ¶ 56), that is not our test. *Wilson* clearly reflects that the test is simply "whether a reasonable intelligent jury would understand these [statements] *to point out defendant's failure to testify." Wilson,* 297 N.W.2d at 482 (emphasis added). That test is consistent with the *Knowles* mandate to determine if a jury would "naturally and necessarily" take them *to be a comment* on the failure to testify.

question refers to the *defendant. See* 2 Childress and Davis, Federal Standards of Review § 12.01, 12–9 (2d ed 1989). Here, the prosecutor went even further and improperly asked "what's true *John.*" Moreover, the prosecutor then made another present tense comment: *"the defendant **knows** what happened. He raped her."*

[¶ 30.] The prosecutor then completely left the discussion of the statements made to Misti Gray and discussed the absence of physical trauma and the State's explanation for that absence (Dr. Strong indicated why the rape would not leave scarring). The prosecutor responded to that absence of physical trauma defense by unequivocally commenting in present tense that: *"the defendant **knows** what happened, but he's not talking. He's not telling us what happened."*

[¶ 31.] Thus, although we agree that the prosecutor could properly comment on prior statements made to Misti Gray, the prosecutor went further than such permissible comment. He also made three present tense comments that Ball "knows what happened" followed with the comment "but he's not talking. He's not telling **us**[8] (the court and jury) what happened." He also asked the jury the rhetorical question "What's true John?" Although it is suggested that "[t]he prosecutor never argued that the jury should infer guilt from the

defendant's silence at trial," *infra* ¶ 44, these comments, when considered together, were more than an indirect reference. Moreover, a direct reference was not necessary:

> When the alleged infringement consists of statements which do not comment directly on the defendant's failure to testify or suggests that an inference of guilt should be drawn from this fact, a reviewing court must look at all the surrounding circumstances in determining whether or not there has been a constitutional violation.

*Butler,* 686 F.2d at 1170.

[¶ 32.] Here, when considered in context, the comments that Ball "knows" what happened, the rhetorical question to the jury and comment that Ball was not telling the jury what happened, were together, of such a character that a jury would naturally and necessarily take them to be a comment on the defendant's failure to testify in violation of part two of *Knowles,* 224 F.2d at 170. In fact, they are quite similar to the improper statements in *Griffin,* 380 U.S. at 611, 85 S.Ct. 1229 (the defendant "knows" or "would know" but he's not seen fit to take the stand and deny or explain). We conclude that the prosecutor's comments were improper comment on Ball's constitutional right to remain silent.[9]

---

8. This reference to "us" (the judge and jury) refutes the dissent's assertion that the comments "related to nothing other" than that the defendant "knows" what happened and is not "telling" *in his statement to the investigator. Infra* ¶ 46.

9. The dissent's contextual analysis of the prosecutor's comments actually takes the comments out of context. *See infra* ¶ 45. In attempting to justify the prosecutor's comment ("but he's not talking, he's not telling us what happened)", the dissent's analysis begins with a prosecutorial reference not even made during the argument at issue (reminding the jury of Ball's response to the question

of his "penis in [her] buttocks"). The dissent then totally omits the lengthy discussion of the absence of physical trauma defense thereby taking the final comment out of context. The dissent's dissection of the improper statements from their contextual ties suggest that there was only one long comment made in response to the Misti Gray interview. This elimination of the contextual references incorrectly suggests that the concluding comments ("but he's not telling us") related to Ball's statement made much earlier. However, a review of the entire quoted argument at ¶ 12 reveals that the last and most improper comments were actually made in response to Ball's defense that the victim was lying and

[¶ 33.] Under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the State may, however, prove that the error was harmless beyond a reasonable doubt. Three elements are considered: (1) the persuasiveness of the comments, (2) the relative strength of the State's case, and (3) the effectiveness of the trial judge's response to the comments. *Id.* at 22, 87 S.Ct. 824.

[¶ 34.] Considering those elements, the State has not met its burden of establishing that the State's error was harmless beyond a reasonable doubt. First, as noted above, the comments by the prosecutor were not isolated. They involved multiple uses of the present tense form of the verb "knows." Moreover, the comments involving Ball's present tense knowledge of what happened were coupled with a rhetorical question to the jury and the concluding comment that "[t]he defendant knows what happened, *but* he's not talking. He's not telling *us* what happened." Thus, the comments were not a single reference to Ball's earlier statements to Misti Gray. The comments were also not benign or a "slip of the tongue." *United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir. 1987). They were extensive and repetitive comments that were more serious than a single, isolated statement. *See Anderson v. Nelson*, 390 U.S. 523, 524, 88 S.Ct. 1133, 1133–34, 20 L.Ed.2d 81, 83 (1968) (per curiam); *Chapman*, 386 U.S. at 26, 87 S.Ct. 824. They were repeated present tense comments on Ball's knowledge of what happened, coupled with a direct comment on Ball's refusal to tell the jury what happened. This type of request of jurors to infer guilt from silence is the most improper. *See Anderson*, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81.

[¶ 35.] Second, the relative strength of State's case was not overwhelming in comparison to the defense. Because there was no physical evidence of sexual abuse, the State's case relied entirely on the victim's statements, both direct and hearsay. However, M.B.'s statements were inconsistent in two important respects. First, they were inconsistently reported to the three hearsay witnesses (Officer Misselt, Dr. Strong, and M.B.'s counselor, Barnett). As a result, the prosecutor readily conceded the deficiencies of M.B.'s story:

> Was [M.B.'s testimony] good? I don't think I would go that far. It definitely wasn't great. Was her story exactly like she told law enforcement? No. Was it exactly like she told the counselors? No. Was it exactly like she told Dr. Strong? No.

Second, the prosecutor conceded that the child's version of the events at trial was not the same as her prior testimony. In fact, as it related to the second count, M.B. denied sexual penetration at trial and in her statement to counselor Barnett.

[¶ 36.] In light of these deficiencies, the defense focused on M.B.'s lack of credibility. The defense alleged that the child's allegations arose because of a custody dispute between Ball and M.B.'s mother, and that a spanking occurred, which would also explain the incidents. The defense also argued that M.B. had been lying to her family and counselor to the extent that she required treatment.

[¶ 37.] Finally, the defense offered an explanatory theory that some of the sexual incidents, short of the rape, did occur. Defendant offered this defense to explain Ball's partial admissions to Misti Gray. To the extent that he could not explain his other statements, Ball argued that medication prevented his recall of some facts and that explained his inability to remem-

---

that there was insufficient trauma to constitute a rape.

ber all details when discussing it with the investigating officers. Therefore, under the defense strategy and the improper prosecutorial comments, the jury was required to assess M.B.'s credibility against Ball's failure to explain M.B.'s allegations. Under those circumstances, one cannot conclude beyond any reasonable doubt that the comments did not contribute to Ball's conviction. That conclusion is reinforced by the fact that due to the timing of the motion, the trial court was not in a position to give a curative instruction to minimize the comment's impact on the jury.

[¶ 38.] Consequently, we conclude that the State has not demonstrated harmless error beyond a reasonable doubt.

> Comment on the failure of the accused to testify is different from comment on his failure to produce evidence in his defense, when it appears within his power to do so. . . . It is a matter which the prosecutor must approach with caution and if [the prosecutor] oversteps the line as to call attention of the jury that accused has not taken the stand or offered himself as a witness, the court should grant a new trial.

*Brown,* 81 S.D. at 199, 132 N.W.2d at 842 (citing *State v. Williams,* 11 S.D. 64, 75 N.W. 815 (S.D.1898)). As this Court stated more than 100 years ago, "the only practical way to remedy [this error] is to grant a new trial." *Williams,* 11 S.D. at 74, 75 N.W. at 817. For those reasons, the conviction must be reversed and remanded for a new trial.

[¶ 39.] Reversed and remanded.

[¶ 40.] SABERS, and MEIERHENRY, Justices, concur.

[¶ 41.] GILBERTSON, Chief Justice and KONENKAMP, Justice, dissent.

KONENKAMP, Justice (dissenting).

[¶ 42.] Today, this Court overturns two first-degree rape convictions. As the sole ground for its decision, the Court finds that the prosecutor improperly commented on the defendant's decision not to testify. It would seem that the prosecutor used the wrong tense in referring to the defendant's voluntary statement to law enforcement. This grammatical gaffe produces a windfall for the defendant: a new trial. In reaching this result, the Court misinterprets the prosecutor's remarks, upsets our established standard of review, and misapplies the new rule it purports to initiate in this case. All the prosecutor's comments that this Court finds offensive to the Fifth Amendment related to the defendant's voluntary statement to a law enforcement officer, not to his decision to decline taking the stand.

[¶ 43.] While the defendant was under investigation for having sexual contact with his eight-year-old daughter during visitation, he walked into the sheriff's office unannounced to talk with the deputy sheriff handling the case. When the deputy asked him about his daughter's accusations, he denied them repeatedly but also said that he did not remember because he had been on medication. Nonetheless, he said that while giving his daughter massages, "his hand could have slipped and touched her private area." When asked by the deputy if some of his daughter's allegations were true, he replied, "some of the things." He told the deputy, "tell [her] I am sorry," and he conceded that "some of these things happened." When asked about whether he inserted his penis in his child's buttocks, he responded, "How did you find out about that?" Realizing the implication of his admissions, he said, "I don't want to go to jail." "I need to be put in a psychiatric ward." When the deputy asked if his daughter was lying, he

replied, "She is not lying. I am not lying. I just don't remember."

[¶ 44.] In closing argument, the prosecutor quoted the defendant's admissions to the deputy and challenged his denials mixed with concessions that "some of these things happened." The prosecutor never argued that the jury should infer guilt from the defendant's silence at trial. On the subject of the defendant's statement, the prosecutor first commented on the defendant's claimed inability to remember. The prosecutor said that the defendant "agrees to certain points, but what is his fall back?"—"I don't remember." This was a theme the prosecutor began in his opening statement.

> There's several reasons he gives to [Deputy Sheriff] Misti Gray about why [his daughter's accusation] is not true, but then you'll also hear later on in the interview after he says he doesn't recall, he says, "Well, some things happened." He says, "I'm sorry that I hurt her. I just want us to get counseling." He goes on further to say, "I don't want to go to jail. Some things are true. I need to be put in a psychiatric ward." That's what he says during an interview with Misti Gray who is investigating allegations of him raping his daughter. But intermixed with that, again, is, "I don't remember. I don't recall. Can we go off the record?" [Note the use of the present tense.]

Thus, in his closing argument, the prosecutor continued: "Mr. Ball knows what happened **and we know that by his statements.** He can't hide from those." The prosecutor then repeated throughout his closing the comment that the defendant "knows what happened."

[¶ 45.] Toward the end of his remarks, the prosecutor said, "the defendant knows what happened, but *he's not talking. He's not telling us what happened. As far as*

*he'll say,* 'Some things are true.'" Again, it is clear from the remarks themselves and the context in which they were made that the prosecutor was referring to the defendant's statement. The quoted language ends with a reference to the defendant's admission that "some things are true," and the emphasized language again refers to the defendant's lack of explanation for saying that some things are true without detailing which things and at the same time claiming that he does not remember. The prosecutor reminded the jury that when asked about whether he inserted his penis in his child's buttocks, the defendant responded, "How did you find out about that?" Hence, the prosecutor's argument: "The defendant knows what happened. He raped her. He wouldn't tell law enforcement. He stopped giving the details as far as the allegations, although some of the allegations are true.... The defendant knows what happened, but he's not talking. He's not telling us what happened. As far as he'll say, 'Some things are true.'"

[¶ 46.] It is important to note that in both his opening and closing remarks, the prosecutor repeatedly referred to the defendant's statement using both past and present tense terms. Thus, from the beginning of the case the jury was accustomed to hearing the statement referred to in both tenses. Perhaps, as a matter of grammatical style, the use of the present tense in closing argument was artless, even careless, but to warrant granting a mistrial the jury would have to "naturally and *necessarily*" conclude that the prosecutor was referring to the defendant's decision not to testify. *See* authorities cited below. On the contrary, if we give any deference to the trial court's findings, these comments related to nothing other than that the defendant "knows" what happened and is not "telling" in his statement to the investigator. The trial judge ob-

served the entire case and this is exactly what the judge found. We are not here to hyper-scrutinize the transcript to find new ways to interpret these remarks.[10]

[¶ 47.] In overriding the trial court's on-the-scene findings, the Court today adopts a controversial new standard of review allowing it to substitute its fact findings for the trial court's on motions for mistrial. Citing five federal decisions from the Ninth Circuit, the Court adopts that circuit's standard. It might make some sense to consider using the Eighth Circuit standard, since we are in that federal circuit and our cases may well be reviewed on habeas by that circuit. But the Eighth Circuit uses the standard we have used for decades: abuse of discretion. *Triplett*, 195 F.3d at 995 (standard of review). Only the Ninth Circuit uses a de novo factual review in this instance. And despite its claim that other courts have adopted the de novo factual review standard for closing arguments, the cases the Court cites simply do not stand for that proposition.[11]

[¶ 48.] Consequently, the bench and bar in South Dakota must now submit to Ninth Circuit jurisprudence, which can only bring our own established process into confusion. Why confusion? Because the Ninth Circuit cannot agree with itself on what the proper standard should be. In decisions handed down after the five cases the Court cites here, in both publish-ed and unpublished opinions, various panels of the Ninth Circuit, acknowledging contradictory cases, have stated that "[t]he standard of review for prosecutorial comment on a defendant's failure to testify or post-arrest silence is *unclear*." *See, e.g., United States v. Hoac*, 990 F.2d 1099, 1103 (9th Cir.1993) (citing contradictory cases) (emphasis added); *United States v. Holub*, 89 F.3d 847 (table), 1996 WL 344619 (9th Cir.1996). Nonetheless, the Court claims that this new standard is appropriate because we have adopted it in instances involving searches and confessions. *Stanga*, 2000 SD 129, 617 N.W.2d 486; *Hirning*, 1999 SD 53, 592 N.W.2d 600. We adopted that standard in those cases based on clear direction from the United States Supreme Court, not direction from the Ninth Circuit.

[¶ 49.] Equipped with its new standard of review, the Court then announces that this case "must" be reversed, presumably because the trial court was legally compelled to grant a mistrial. As the United States Supreme Court warned in *United States v. Hasting*, "when courts fashion rules whose violations mandate automatic reversals, they 'retreat from their responsibilities, becoming instead "impregnable citadels of technicality." ' " 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 106 (1983) (citing R. Traynor, The Riddle

10. The Court accuses the dissent of taking the prosecutor's comments out of context. To assert this, the Court relies on the paragraphing used by the court reporter. This again illustrates the problem of trying to discern the meaning of oral comments from the cold record. If the quoted sentences were placed at the top of the very next paragraph, or given their own paragraph, the context the trial court found can be substantiated.

The defendant knows what happened, but he's not talking. He's not telling us what happened. As far as he'll say, "some things are true."

The child has told everybody who will listen what happened.

11. The question here is not whether we review constitutional violations de novo. The Court goes beyond that. Here, the Court makes its own de novo *fact findings* from the transcript. No court other than the Ninth Circuit has explicitly done that. The Court here claims that the Eighth Circuit case of *Triplett* uses that standard. Nothing in that case, or any other Eighth Circuit case, indicates that such fact findings are made de novo.

of Harmless Error 14 (1970) (quoting Kavanagh, Improvement of Administration of Criminal Justice by Exercise of Judicial Power, 11 A.B.A.J. 217, 222 (1925))). If an issue of prosecutorial misconduct is preserved with a timely objection at trial, we review the trial court's ruling under the standard of abuse of discretion. *State v. Owens*, 2002 SD 42, ¶ 101, 643 N.W.2d 735, 758. Here, there was no record objection during closing argument. After the jury retired to deliberate, defense counsel moved for a mistrial. Until today, we have always reviewed such motions under the abuse of discretion standard. "A trial court's decision to deny a motion for mistrial will only be reversed if the decision was an abuse of discretion." *State v. Garnett*, 488 N.W.2d 695, 698 (S.D.1992) (citations omitted). *See also State v. Bogenreif*, 465 N.W.2d 777 (S.D.1991); *State v. Blalack*, 434 N.W.2d 55 (S.D.1988); *State v. McDowell*, 349 N.W.2d 450 (S.D.1984). The Eighth Circuit applies the same standard. *See Triplett*, 195 F.3d at 995 (abuse of discretion standard applies to mistrial motion on prosecutor's comment on defendant's failure to testify).

[¶ 50.] If we adhere to our settled rule, and leave to the Ninth Circuit its unsettled rule, then we must acknowledge that trial courts have considerable discretion not only in granting or denying a mistrial, but also in determining the prejudicial effect of claimed misconduct. *State v. Michalek*, 407 N.W.2d 815, 818 (S.D.1987). "An actual showing of prejudice must exist to justify the granting of a mistrial." *State v. Farley*, 290 N.W.2d 491, 494 (S.D.1980) (citation omitted).

[¶ 51.] It is true that in several circumstances, we review questions of constitutional error de novo, but we still give deference to the trial court's findings on the underlying facts. As the Supreme Court wrote in declaring de novo review for Fourth Amendment questions, "[h]aving said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, 517 U.S. at 699, 116 S.Ct. 1657.

[¶ 52.] Even when reviewing constitutional error, therefore, we ought to indulge the judge's firsthand impressions and findings because the trial court is in the best position to evaluate the significance of any alleged wrongdoing. We have explained many times that judges have wide discretion in controlling the proceedings before them and that no one is entitled to a perfect trial. This standard is not to be brushed aside. As one appellate court explained, trial judges are

> best able to measure the impact of improper argument, the effect of the conduct on the jury, and the results of [the judge's] efforts to control it. Our review is not only hindsight, but is based on a written record with no ability to assess the impact of the statement on the jury or to sense the atmosphere of the courtroom.

*Caldarera*, 705 F.2d at 781–82.

[¶ 53.] Taking its model from the Ninth Circuit, however, the Court here acts as if it were in a better position to assess the impact of the prosecutor's remarks simply by virtue of having a transcript. Armed with the transcript, the Court reweighs the evidence, arriving at the dubious conclusion that the trial court would have so ruled had it had a transcript. The Court cites several remarks not identified by the defense in its mistrial motion or even in its appellate briefs and then concludes that the trial court was forced to rely on its recollection, which ostensibly must be inferior to having a transcript. This turns our review standard upside down. A judge's

contemporary sense impressions of trial proceedings and juror impact are entitled to deference. To insinuate that trial courts cannot remember what they just heard and to reckon that our possession of a transcript thus elevates our examination on appeal subverts our established appellate procedure.

[¶ 54.] Invoking another controversial technique, the Court uses a "divide and conquer" analysis to deconstruct the prosecutor's closing argument. As the authors of Federal Standards of Review note,

> Early cases indicate that almost any comment on a defendant's silence, either at trial or before, would constitute a *Griffin* or *Doyle* violation. Review nevertheless is meant to focus on the potential effect on the jury rather than on the specific content of the comment, and recent applications have been based on this focus. Therefore, in defining what is a prohibited comment, courts in effect must perform a harmless error assessment, which places the comment in the context as to the whole record.

*See* 2 Childress and Davis, Federal Standards of Review § 12.01, 12–5–12–6 (3d ed. 1999) (citation omitted). That is exactly the opposite of what this Court does today. The Court concludes, "Because the prosecutor made many such present tense comments coupled with a rhetorical question to the jury and the specific comment that Ball was not telling 'us' (the jury) what happened, the mistrial motion must be granted." Rather than focusing on the totality of the record and the potential effect of the prosecutor's comments on the jury, the Court delves into an exhaustive critique of the prosecutor's remarks divorced from their impact on the jury. We are not here to parse and weigh events in a trial as though we were trial judges. Yet the Court dissects the prosecutor's remarks and analyzes them in a light con-

trary to how the trial court perceived them. The rigorous exegesis in the majority opinion comes not from defense counsel's argument, but from this Court's de novo factual findings deduced from the transcript in usurpation of the trial court's function. And this occurs despite the fact that when defense counsel brought the matter to the trial judge's attention, the remark complained of was only the following:

> Your Honor, during closing [the prosecutor] made a statement. I wrote it down. "He's not talking" was in the present tense.

After hearing from the prosecutor, the trial court ruled:

> The motion is denied. I heard the statement and it was in direct reference to Misti Gray's testimony, what Mr. Ball discussed with her, and [the prosecutor] was summarizing the events and the arguments and says he's not talking. I didn't take it—it was used more of a slang and not intended to be in the present tense in reference to Mr. Ball not taking the stand.

No other remarks were brought to the trial judge's attention.

[¶ 55.] In reviewing a prosecutor's challenged comments, we examine whether (1) it was the prosecutor's manifest intention to refer to the defendant's silence; or (2) the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's silence. *Triplett*, 195 F.3d at 995 (8th Circuit abuse of discretion review standard on direct appeal). If it is asserted that the prosecution referred to the defendant's silence, we must determine whether the jury was thereby invited to infer guilt from the defendant's decision not to testify. *United States v. Sblendorio*, 830 F.2d 1382, 1391 (7th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1034,

98 L.Ed.2d 998 (1988). A prosecutor's intent is not "manifest" if there is an equally plausible explanation of the prosecutor's remarks. *Collins,* 972 F.2d at 1406. Thus, the challenged remarks must be considered in the context in which they were made. *Montoya–Ortiz,* 7 F.3d at 1179 (citation omitted).

[¶ 56.] After concluding that the first prong of this test has not been met, the Court then misapplies the second prong: the question is whether the complained of comments were "of such character that the jury would naturally and *necessarily* take [them] to be a comment on the failure of the accused to testify." *Knowles,* 224 F.2d at 170 (emphasis added). *See also Weddell v. Meierhenry,* 636 F.2d 211 (8th Cir.1980), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2024, 68 L.Ed.2d 329 (1981). Under this prong, the remarks "had to be so worded that a jury *must* construe [them] wrongly, not that any jury reasonably *could.*" *See* 2 Childress and Davis, Federal Standards of Review § 12.01, 12–8 (3d ed. 1999) (citation omitted) (emphasis added). With the jury having heard the prosecutor refer to the defendant's statement in both the past and present tense from the beginning of the trial, we are in no position to conclude that the argument was so worded that the jury would have *necessarily* construed it wrongly.

[¶ 57.] Nonetheless, in yet another twist on the "divide and conquer" approach, the majority only seems to adopt a new rule today. When it is required to apply the new rule, it reverts to the old rule, citing our earlier case of *Wilson,* 297 N.W.2d at 482 (holding that "No reasonable jury *could* infer it to be a reference to defendant's failure to testify"). Under the old test, the question was whether the jury "would" or "could" infer that the prosecutor was referring to the defendant's decision not to testify. *Id.* Under the new

test, the question is whether the jury would "naturally and *necessarily* " make that inference. Now, with the Court's divided concoction of old and new rules, our standard becomes contradictory and confusing.

[¶ 58.] In reviewing the prosecutor's remarks, it is also important for us to recognize a critical distinction. Undoubtedly, a prosecutor's comment on a defendant's exercise of the Fifth Amendment right to remain silent can constitute error justifying reversal. Yet, the rule does not apply when a defendant did not remain silent by voluntarily giving a statement to police. *See State v. Olguin,* 88 N.M. 511, 542 P.2d 1201, 1203 (N.M.Ct.App.1975). When a defendant has chosen to not remain silent and to give a statement to law enforcement, the prosecutor is entitled to comment on that statement, to point out its lack of credibility, and to highlight the fact that the defendant omitted important details in the statement. *State v. Johnson,* 102 N.M. 110, 692 P.2d 35, 39 (N.M.Ct. App.1984), *overruled in part on other grounds by Manlove v. Sullivan,* 108 N.M. 471, 775 P.2d 237 (N.M.1989). The fact that a defendant omits details in a statement is not the kind of silence that is constitutionally protected because the defendant did not remain silent with respect to the subject matter of that statement. *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). When a defendant gives a statement but refuses to answer specific questions, the answers provide a context lending probative value to the silent responses, and comment on those silent responses is not prohibited. *United States v. Goldman,* 563 F.2d 501 (1st Cir.1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 768 (1978).

[¶ 59.] In *Johnson,* a case dealing with a similar issue, the court recognized that "[t]he state may question the plausibility

of an exculpatory statement," and thus the court concluded that "[t]he jury, having listened to many minutes of argument addressed to the statement, would have understood the [challenged] remark in that context." 692 P.2d at 40. Likewise, our conclusion here should be that the jury having heard the prosecutor's present tense comments about the defendant's statement to law enforcement from the beginning of the trial would have understood them to be comments on that statement.

[¶ 60.] Even if the prosecutor's comments could be held to have violated the defendant's right against self-incrimination, the convictions may still be affirmed if we can "declare a belief that [the comments were] harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The State bears the burden of proof on this question. *Id.* We must answer the question: would the jury have convicted the defendant absent the comments? *Hasting*, 461 U.S. at 510–11, 103 S.Ct. 1974. In considering the probability that the prosecutor's comments turned the jury verdict, we examine three elements: the persuasiveness of the comments, the relative strength of the State's case, and the effectiveness of the trial judge's response to the comments. *See Chapman*, 386 U.S. at 22, 87 S.Ct. 824. Of course, these elements are not to be applied formulaically: our inquiry is whether a court, after examining these elements in the totality of circumstances, can declare that the improper comments did not alter the verdict.

[¶ 61.] As to the persuasiveness element, we all recognize that a prosecutor's request of jurors to infer guilt from silence is most improper. *See Anderson v. Nelson*, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968). A comment on a "defendant's failure to testify cannot be la-

beled harmless error in a case where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis of conviction, and where there is evidence that could have supported acquittal." *Id.* at 523–24, 88 S.Ct. 1133. In *Anderson*, the prosecutor commented:

> Mr. Anderson could have gotten on the stand and told you, "No, I didn't sign that," or, "I wasn't up to the Calverts [trucking firm] and somebody else told me about it, as I told Sergeant Sonberg [the arresting officer]."

> In other words, you can consider that, when a person could be expected to know something about something, and he doesn't tell you what obviously he must know, why, then you can draw certain inferences from that.

*Id.* at 526, 88 S.Ct. 1133. In that case, the trial court also gave an instruction on the adverse inference the jury could draw from the defendant's failure to testify. Here, no such suggestion was made. The prosecutor was referring to the defendant's partial admission to the investigator that some things the child said were true, but he would not say which things were true. *See United States v. Passaro*, 624 F.2d 938, 945 (9th Cir.1980) (refusing to reverse conviction where prosecutor had made "no attempt to link a conclusion of guilt with defendant's silence[.]"). *See Bernard v. State*, 540 N.E.2d 23, 25 (Ind. 1989) (comments were prolix and only marginally improper because vague and disjointed).

[¶ 62.] Here, the persuasive strength of the prosecutor's remarks were minimal. They were indirect references, alluding to the defendant's earlier statement. Granted, the prosecutor's rhetorical question to the jury—What's true, John?—walked the line, but it clearly was in reference to the defendant's comment to the deputy that "some things are true." *See United States*

*v. Johnston,* 127 F.3d 380, 396 (5th Cir. 1997) ("The prosecutor's argument, although unartful, does not demonstrate manifest intent to comment on the defendants' silence, nor would a jury necessarily construe it as a comment on their failure to testify.").

[¶ 63.] The next element we consider is the strength of the State's case. In several instances, we have resolved the question of harmless error on the fact that the evidence against the defendant was "overwhelming." *Stanga,* 2000 SD 129, ¶ 20, 617 N.W.2d at 491; *State v. Schuster,* 502 N.W.2d 565, 570 (S.D.1993). Obviously, the effect of a persuasive comment depends on the relative strength of the case against the defendant. *See Anderson,* 390 U.S. at 524, 88 S.Ct. 1133; *United States v. Ashford,* 924 F.2d 1416 (7th Cir.1991); *United States v. Pallais,* 921 F.2d 684 (7th Cir.1990). While the "overwhelming" nature of the evidence may be determinative in some cases, the inquiry is often not so elementary. *See, e.g., Splunge v. State,* 641 N.E.2d 628, 630 (Ind.1994) (finding error harmless after considering intent of prosecutor, directness of reference, extensiveness of reference, and overwhelming nature of evidence). In effect, a court must measure the strength of the case by considering the evidence without the challenged impropriety. *See Hasting,* 461 U.S. at 511–12, 103 S.Ct. 1974; *Fontaine v. California,* 390 U.S. 593, 595–96, 88 S.Ct. 1229, 1230–31, 20 L.Ed.2d 154 (1968) (per curiam); *Williams v. Lane,* 826 F.2d 654, 667 (7th Cir.1987). We cannot say here that the evidence was overwhelming. Nonetheless, the record shows without contradiction that the defendant had regular access to the victim, she gave a credible rendition of events, and he admitted that "some" of his child's allegations were true: He even exclaimed, "How did you find out about that?" when confronted with his daughter's explicit accusation. With these admissions, certainly the case was strong.

[¶ 64.] Lastly, we measure the effectiveness of any corrective measures the trial judge implemented. Here, defense counsel made no record objection at the time of the comments. Instead, counsel approached the bench for an off-the-record discussion after the prosecutor's closing argument. When all the arguments were over and the jury retired to deliberate, defense counsel then moved for a mistrial on the record. The court was never requested to give an admonition and, of course, could not at the time the comments were made because the alleged impropriety was not brought to the court's attention until after argument. Nonetheless, it is a questionable proposition that trial judges should give, sua sponte, curative admonitions on a defendant's right not to testify, as such instructions themselves may draw unwarranted and prejudicial attention to a defendant's exercise of that right. *See Williams v. State,* 426 N.E.2d 662, 667 (Ind.1981) (Under Indiana law: "[T]he jury should be given an admonition [regarding an improper prosecutorial comment] when the defendant requests one, *and not otherwise,* and ... the test to be applied in determining whether or not to grant a mistrial is whether or not such an admonition would be fully effective if given."); *Dooley v. State,* 271 Ind. 404, 393 N.E.2d 154, 156 (Ind.1979).

[¶ 65.] In any event, the trial judge gave the pattern instruction on a defendant's right not to testify at the close of the case, stating, "Every defendant in a criminal case has the absolute right not to testify. You must not draw any inference of guilt against the defendant because he did not testify." We presume that jurors will follow the court's limiting instructions. *State v. Maves,* 358 N.W.2d 805 (S.D.1984); *State v. No Heart,* 353 N.W.2d 43 (S.D.

1984). We should not presume that jurors are juridical infants, incapable of distinguishing between proper and improper legal inferences, especially in light of this instruction. Under all these circumstances, even if the prosecutor's remarks were improper, we can declare beyond a reasonable doubt that the remarks were harmless.

[¶ 66.] In summary, the prosecutor's comments were not directed at the defendant's decision not to testify and it was not an abuse of discretion to refuse to grant a mistrial. The defendant's own admissions, oblique and evasive as they may have been, were far more damaging than the prosecutor's purportedly improper remarks. I would affirm the convictions.

[¶ 67.] GILBERTSON, Chief Justice, joins this dissent.